JOHN WESLEY BARGER, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 4896

November 9, 1965                    407 P.2d 584

*Robert Santa Cruz* and *A. M. Dreyer,* of Las Vegas, for Appellant.

*Harvey Dickerson,* Attorney General, of Carson City; *Edward G. Marshall,* District Attorney, Clark County, and *Paul Parraguirre,* Deputy District Attorney, of Las Vegas, for Respondent.

# OPINION

By the Court, THOMPSON, J.:

Barger was convicted of first degree burglary following a jury trial in the district court at Las Vegas, Nevada. On this appeal his main claim of error is that the lower court refused to instruct the jury about his only defense—entrapment—even though he had testified, explaining in detail how a police officer induced him to encourage and assist another in burglarizing Al's Cycle Shop. Some of his testimony is quoted in the footnote.[1] The jury had the right to believe it or reject it.

---

[1][Direct examination by Mr. Santa Cruz, for defense:]

"* * * A. Well, after I had been stopped and searched they would release me and let me go then, after writing me a citation, but at my home address, the officers would approach me and try to get me to make a deal on someone, or set some of my friends up.

"Q. You say the officers approached you, now who approached you, if anyone?

"A. Julie Goldberg.

"Q. And when did this take place, if you can recall?

"A. Well, during the whole time that I lived at this address, this has taken place numerous dates and times prior to the night

If believed, a verdict of not guilty might have been returned, for his story could establish the defense of entrapment. Yet such possible result was effectively precluded by the court's refusal to instruct on that doctrine. We may not presume that the jurors were aware of that defense when they were not told about it. The prejudice flowing from this mistake is manifest.

Citation of authority is no longer necessary for the proposition that a defendant in a criminal case is

---

of this arrest, on the 16th of March, I agreed with Mr. Goldberg to set one of my friends up.

"Q. Who did you agree to set up, Mr. Barger?

"A. Granby Andrew Hanley.

"Q. When you mean set him up, what do you mean by that?

"A. Frame him into a burglary.

"Q. Who suggested this, if anyone?

"A. Mr. Goldberg.

"Q. What did you say, if anything?

"A. Well, at first I didn't agree to it, but he said that was the only way I was going to get rid of the harrassment and the rousting that was going on all the time, and the continuous arrests and slammed in jail.

"Q. Did you finally agree to set Hanley up?

"A. Yes, I did, on the 16th of March.

\* \* \* \* \*

"Q. What did you say to Julie Goldberg when you agreed to set up, Andrew Hanley up?

"A. I asked him, I asked him if, what would happen to me, and he said the charges would be taken care of later after Hanley was convicted, but they have had such a strenuous time convicting Hanley that they have failed to do anything about my charges. He had a deal made with Mendoza on it, but Marshall wouldn't keep the deal that Mendoza made.

"Q. You say he had a deal made, who is this?

"A. Mr. Goldberg.

\* \* \* \* \*

"Q. What was the deal you made with Goldberg concerning getting Hanley into the shop?

"A. The deal was to get Mr. Hanley into the shop to look for his title and while he was looking for the title, I was to take and load boxes with motorcycle parts, and I would put all kinds of parts into the boxes.

\* \* \* \* \*

"A. After that [the police's arrival] I kept pleading with him [another officer] and wondering where Julie was, because he told me he would be at the Sunrise Hospital, and as soon as the call came over the radio he would speed to the motorcycle shop and get me out of there so I wouldn't get hurt, and he never appeared and

entitled to have the court instruct the jury about his theory of defense, if there is evidence to support it. The state acknowledges the rule, but suggests that Barger's testimony was a fantasy not worthy of belief and cannot qualify as "some" evidence, "substantial" evidence or, indeed, even as "any" evidence; and reminds us that three credible prosecution witnesses testified, in substance, that Barger's story was false. Authority is not offered in support of that suggestion. There is none —at least we have been unable to find any—and if, perchance, we did discover such a case, we would not

---

I was, so then I started screaming Julie, Julie, and it was a few seconds and Julie appeared at the rear door of the shop.

\* \* \* \* \*

"A. After the shooting, they handcuffed Mr. Hanley and took him out to the car and then Goldberg handcuffed me and took me out and he says, now keep your mouth shut John and nothing will happen to you.

\* \* \* \* \*

[Cross examination]

"Q. You admitted [that you had broken in] to Officer Goldberg?

"A. I didn't have to admit it to Officer Goldberg. He set the deal up.

\* \* \* \* \*

"Q. Your intent was to take those motorcycle parts out of there, wasn't it?

"A. No, my intent was not to take them out. \* \* \* My intent was to put them in the box like I was told, so it would look like a big burglary.

\* \* \* \* \*

"A. I was not supposed to break into the shop, I was supposed to let Mr. Hanley do this.

\* \* \* \* \*

"Q. No one gave you permission to enter that building, did they?

"A. No one, except Officer Goldberg.

\* \* \* \* \*

"Q. This was supposed to be a set-up, as you called it. When Officer Julie Goldberg said, is anybody in here besides you, do you remember that question? \* \* \*

"A. No, I didn't give an answer. He knew there was somebody else in the building, I did not have to give an answer.

\* \* \* \* \*

"Q. Now the intention was, had you not been caught, you were going to get that stuff all out, is that right, move it out to the back and then load it on the pickup, is that right?

"A. No, that is not correct, because I knew we were going to be caught."

adhere to its doctrine. We hold that a defendant in a criminal case is entitled to have the jury instructed on his theory of the case as disclosed by the evidence, no matter how weak or incredible that evidence may appear to be. People v. Carmen, 228 P.2d 281 (Cal. 1951). The jury by its verdict will decide whether the truth rests with the state or the defense.

Though the state intimates otherwise, our holding today is not contra to Wyatt v. State, 77 Nev. 490, 367 P.2d 104. In that case the defendant did not testify, nor was evidence offered on his behalf. Upon analysis, the state's evidence did not show entrapment. Therefore, the trial court refused to instruct on that doctrine, and we affirmed on appeal. Here Barger did take the stand. His tale, if believed, could establish the defense of entrapment. The difference between the two cases is glaringly apparent.

Other assignments of error are made. However, we will not discuss them as we do not anticipate recurrence of the questioned matters when this case is tried again.

During trial Barger was represented by court appointed counsel. NRS 174.120. That counsel chose to appeal, and is entitled to recover the enlarged compensation provided for by NRS 7.260(4). He associated co-counsel on appeal, without obtaining a court order of appointment. We direct the lower court to give each counsel for Barger the certificate specified in NRS 7.260(3). Carter v. State, 79 Nev. 89, 378 P.2d 876.

Reversed and remanded for new trial.

BADT, J., and ZENOFF, D. J., concur.