JOSEPH MILES WALKER, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 5557

May 28, 1969      455 P.2d 34

[Rehearing denied June 27, 1969]

*Frank J. Sala* and *Mack Fry,* of Reno, for Appellant.

*Harvey Dickerson,* Attorney General, *William J. Raggio,* District Attorney, and *Virgil D. Dutt,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

Joseph Miles Walker makes his third appearance before this court for the same offense, the murder of Paul Allison in a camper pickup truck owned by Allison in which Walker was a hitchhiking passenger. His conviction was affirmed in Walker v. State, 78 Nev. 463, 376 P.2d 137 (1962), but was later overturned in Walker v. Fogliani, 83 Nev. 154, 425 P.2d 794

(1967), on a remand from the United States Ninth Circuit Court of Appeals, United States v. Fogliani, 343 F.2d 43 (9th Cir. 1965), for grounds therein stated.

Walker was again tried in the Washoe District Court, found guilty and sentenced to death. In the trial from which this appeal was taken he did not testify in his own defense. Numerous grounds have been asserted, none of which have merit.

Allison was driving his camper through Elko when he picked up Walker. They purchased food and gin in Carlin, a small community a few miles outside Elko, then proceeded to Lovelock, in Pershing County, for gasoline, drove a few more miles outside Lovelock where they parked for a time. They then returned to Lovelock for more liquor, again traveled a further distance before they stopped a second time. They indulged in continuous drinking and eventually engaged in a fight during which Allison was stabbed in the back. He was found dead in the camper parked in a parking lot in Reno on September 24, 1960, a few days after Allison and Walker first met in Elko. Allison's hands were tied over his chest and a soda drink bottle was stuffed into his rectum. Walker was found several months later in the Oklahoma State Prison where he was serving time for an unrelated offense. He was charged with Allison's murder.

*1. Exclusion of jurors.*

Appellant contends that prospective jurors who indicated mere distaste for the death penalty were excluded from the jury. However, the prospective jurors who were discharged stated that they would not return a death penalty under any circumstances. Therefore, exclusion was proper under former NRS 175.105(9), Witherspoon v. Illinois, 391 U.S. 510 (1968), and Boulden v. Holman, 394 U.S. 478 (1969). The trial court properly construed the cited statute as interpreted by this court in Howard v. State, 84 Nev. 599, 446 P.2d 163 (1968); Spillers v. State, 84 Nev. 23, 436 P.2d 18 (1968); State v. Williams, 50 Nev. 271, 257 P. 619 (1927). See also State v. Leland, 227 P.2d 785 (Ore. 1951), aff'd, 343 U.S. 790 (1952), rehearing denied, 344 U.S. 848 (1952); People v. Riser, 305 P.2d 1 (Cal. 1956); Turberville v. United States, 303 F.2d 411 (D.C.Cir. 1962), cert. denied, 370 U.S. 946 (1962); People v. Gilbert, 408 P.2d 365, 378 (Cal. 1965); State v. Leuch, 88 P.2d 440 (Wash. 1939).

2. *Should Walker have been permitted to defend himself?*

Appellant contends that his trial counsel should not have been thrust upon him because he desired to defend himself. He represented to the court that he had been reading law books for several years and was prepared to proceed. He asked to dismiss his attorneys. The court informed Walker that he could defend himself but that counsel would be required to remain at his side and that if he proved incompetent counsel would be reappointed. Thereupon Walker moved for time to prepare for trial. Understandably the motion was denied. Counsel were reappointed and the trial proceeded. No authority need be cited to support the trial judge's exercise of discretion.

3. *Should the endorsement to the information of the names of additional witnesses for the state have been permitted?*

The State moved to add the name of Frank Hart to the list of prospective witnesses. The defense added one also. The defense objected to the State's endorsement of an additional witness upon the representation from the State that it was previously unaware of the materiality of Hart's proposed testimony and that the testimony would only be that Hart was present when Walker's fingerprints were taken. The request was granted. Other names were later added at the request of the district attorney for the stated reason that the evidence adduced by Walker at the second trial did not come out at the first trial and therefore the materiality of the testimony of the new witnesses was not foreseeable. No prejudice was shown or appears from allowing the endorsements. There was no error. Gallegos v. State, 84 Nev. 608, 446 P.2d 656 (1968).

4. *Were the photographs of the victim admissible?*

The court found that probative value outweighed prejudice, if any. The photographs were admissible. Gallegos v. State, 84 Nev. 608, 446 P.2d 656 (1968); Jackson v. State, 84 Nev. 203, 438 P.2d 795 (1968); Wallace v. State, 84 Nev. 603, 447 P.2d 30 (1968); Guyette v. State, 84 Nev. 160, 438 P.2d 244 (1968); Morford v. State, 80 Nev. 438, 395 P.2d 861 (1964).

*5. Does the Fifth Amendment of the U.S. Constitution require an indictment in a capital offense in a state prosecution?*

No. Morford v. Hocker, 394 F.2d 169 (9th Cir. 1968), cert. denied, 392 U.S. 944 (1968); Hurtado v. California, 110 U.S. 516 (1884); McNulty v. California, 149 U.S. 645 (1893); Black v. California, 315 U.S. 782 (1942) (appeal dismissed for lack of a substantial federal question); Beck v. Washington, 369 U.S. 541 (1962); Gaines v. Washington, 277 U.S. 81 (1928); Lem Woon v. Oregon, 229 U.S. 586 (1913); Graham v. West Virginia, 224 U.S. 616 (1912); Bolln v. Nebraska, 176 U.S. 83 (1900); Hodgson v. Vermont, 168 U.S. 262 (1897).

*6. Was it necessary to file a new information after the reversal of the conviction based on the original information?*

No. In legal contemplation there never was a trial. Garnick v. District Court, 81 Nev. 531, 539, 407 P.2d 163, 167 (1965).

*7. Did appellant have the constitutional right to county funds for general investigation expenses?*

This issue was decided in State v. District Court, 85 Nev. 241, 453 P.2d 421 (1969). Appellant did have an investigator for the first trial. The investigator was deceased but his testimony at the first trial was read at the second trial. The motion for expenses at this trial was denied because the need for the funds was not set forth with sufficient particularity. The trial court was correct.

*8. Should a change of venue have been granted to Walker?*
*a. Pretrial publicity.*

No. We have examined the record in the light of the guidelines offered by Sheppard v. Maxwell, 384 U.S. 333 (1966). The newspaper clippings show nothing that was not a matter of public record. The jury was impartial. Beck v. Washington, supra; Irvin v. Dowd, 366 U.S. 717 (1961); Stroble v. California, 343 U.S. 181 (1952). There was no showing of actual prejudice. Beck v. Washington, supra; Irvin v. Dowd, supra; Stroble v. California, supra. Nor is there a showing of a totality of circumstances that would raise a presumption of prejudice.

Rideau v. Louisiana, 373 U.S. 723 (1963); Estes v. Texas, 381 U.S. 532 (1965); Sheppard v. Maxwell, supra; Corbett v. Patterson, 272 F.Supp. 602 (D. Colo. 1967).

*b. Jurisdiction.*

Walker complains that the crime he is charged with occurred in a county other than Washoe and therefore he cannot be tried in Washoe. In Walker v. State, 78 Nev. 463, 472, 376 P.2d 137, 141 (1962), the venue was questioned and decided.

"We conclude, therefore, that venue could properly be laid in Washoe County. . . .

"There is no question concerning the jurisdiction of the Washoe County court."

The law of a first appeal is the law of the case on all subsequent appeals in which the facts are substantially the same. State v. Loveless, 62 Nev. 312, 150 P.2d 1015 (1944); Graves v. State, 84 Nev. 262, 439 P.2d 476 (1968). The facts at the second trial were substantially the same; therefore we find no merit in appellant's contention.

*9. Was error committed by the request for jury sequestration?*

Walker asserts error because he was forced to move for jury sequestration pursuant to NRS 175.320 (now NRS 175.391) in the presence of the jury and was thereby prejudiced.

After the jury selection Walker moved to sequester, but his motion to sequester was denied with leave to renew at a later time. Later he did move to sequester in the presence of the jury and it was granted. Then, well into the trial, Walker in the absence of the jury indicated that the jury was inconvenienced by the sequestration and the long evening sessions. He then abandoned his objection to the night sessions and indicated he meant really to object only to sequestration which he had originally requested. The jury was polled and all indicated that the night sessions were satisfactory. Walker's complaint that he was "forced" to request sequestration in the presence of the jury by the court is not exactly accurate but the trial court indicated as much by stating that it was relying on Sollars v. State, 73 Nev. 248, 316 P.2d 917 (1957). The court erred in its interpretation of *Sollars* in requiring the motion to be made before the jury, but since the polled jurors were satisfied nothing appears to inject prejudice by the error.

*10. Did the trial court commit error in failing to suppress a confession which was never used?*

Walker complains that he was kept from testifying because he was afraid of being impeached by his own confession. The previous decisions of this court relating to Walker, already cited, specify the details of the confession. We fail to see the merit or rationale of an objection which neither goes to a confession that is not in the record nor is used against him at the trial. This assertion of error will not be entertained.

*11. Assortment of errors alleged:*

a. The trial court excluded a registration card from a Fernley, Nevada, motel which bore the license number of the victim's camper. This was relevant to venue because it showed that the camper was in Fernley on September 19th. Since venue had been previously determined on similar evidence in the first appeal this issue is moot.

b. In the closing arguments Walker contends that the district attorney committed reversible error by insinuating that Walker was claiming self-defense. The purported error lies in the fact that no evidence of self-defense was given. We have examined the remarks and find no error. We also note that it is difficult to divine how appellant can claim error in this regard with one breath and in the next urge that error occurred because an instruction on self-defense was not given.

c. This supreme court appointed counsel for the retrial which Walker claims was error. We performed that function as part of our grant of Walker's petition for habeas corpus and therefore had jurisdiction to appoint counsel to carry out the terms of our decree. The appointment was necessitated by a conflict of interest in Walker's representation prior to the appointment.

d. Walker submits that his instruction on self-defense should have been submitted to the jury, but Barger v. State, 81 Nev. 548, 407 P.2d 584 (1965), disposes of that question. There was no evidence of self-defense, no issue was created, and thus no instruction was required. Also on another point

Graves v. State, 84 Nev. 262, 439 P.2d 476 (1968), relied upon by appellant disposes of his contention that an instruction on manslaughter was required. The instructions on murder and felony murder conformed to the statutes and were supported by the evidence. Walker further complains that Instruction 38 defining reasonable doubt in terms different from those in Instructions 36 and 37 were cumulative and erroneous. The instruction was taken from State v. Boyle, 49 Nev. 386, 248 P. 48 (1926), and approved in that case. We do not believe the jury was confused by Instructions 36 through 38.

We have reviewed the record in its entirety. There was no error sufficient to warrant reversal.

Affirmed.

COLLINS, C. J., BATJER, MOWBRAY, and THOMPSON, JJ., concur.