CLAUDE THERIAULT, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 8147

March 26, 1976                    547 P.2d 668

Alan R. Johns and Gordon Hawkins, Las Vegas, for Appellant.

Robert List, Attorney General, Carson City; George E. Holt, District Attorney, and H. Leon Simon and Rimantas A. Rukstele, Deputies, Clark County, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

A jury found Claude Theriault guilty of two counts of first-degree murder. He has appealed from his judgment of conviction, asserting numerous assignments of error, which we reject as meritless. We therefore affirm the judgment.

1.   During the evening of December 18, 1971, Eugene and Mary Carone were brutally murdered in their room at the Westward Ho Motel in Las Vegas. The victims had been

stabbed repeatedly. Both expired from deep chest wounds. Police investigation revealed that Mrs. Carone's wedding ring was missing. Later investigation revealed that Lloyd Leonard Paulette, who was also charged with the two murders, and found guilty in a separate trial, pawned the ring on December 19, 1971, in a Las Vegas hock shop. It was further learned that Paulette had checked a party of two into the Westward Ho Motel on December 17, 1971, and checked out the morning of December 19, 1971.

That same day, Paulette checked into the Terminal Hotel in Los Angeles, using an assumed name. The following day, Theriault was asked to sign the hotel register because he was staying with Paulette. He did so, using an assumed name. On December 21, 1971, Theriault and Paulette were stopped for running a red light in San Diego. It was learned the car they were driving had been stolen; so they were both placed under arrest. Two days later, the Carones' car was found abandoned in Los Angeles. Theriault's fingerprints were found in the car, and Theriault's fingerprint and palm print were found in the Carones' motel room.

2. Theriault cites as error the district court's failure to dismiss the indictment for not affording him a speedy trial. This same issue was included in Theriault's pretrial petition for habeas corpus relief, which was rejected by order of the district court, said order being affirmed on appeal to this court in Theriault v. Sheriff, 89 Nev. 506, 515 P.2d 397 (1973). An examination of Theriault's points and authorities in support of his motion to dismiss in the habeas proceedings reveals that the argument is word-for-word the same argument advanced in this appeal. The prior ruling on this point became the law of the case, and it will not be reconsidered in this appeal. See Hall v. State, 91 Nev. 314, 535 P.2d 797 (1975); Walker v. State, 85 Nev. 337, 455 P.2d 34 (1969).

3. Theriault, who claims to be a citizen of another country, claims that the district court erred in ruling that he was amenable to criminal process in this State. NRS 171.010 provides:

"*Every person*, whether an inhabitant of this state, or any other state, or of a territory or district of the United States, *is liable to punishment by the laws of this state for a public offense committed by him therein*, except where it is by law cognizable exclusively in the courts of the United States." (Emphasis added.)

Theriault claims that the portion of the statute which says ". . . whether an inhabitant of this state, or any other state, or of a territory or district of the United States . . ." should be construed to provide that only citizens of the United States, the territories, and the District of Columbia can be subject to criminal prosecution and that foreign nationals who may commit a crime while in Nevada are exempt from prosecution. As this court said in Paulette v. State, 92 Nev. 71, 72, 545 P.2d 205, 206 (1976):

". . . [W]e decline to presume that the legislature intended such absurdity. [Cite omitted.] While the aforementioned phrase does not specifically refer to inhabitants of foreign countries, we believe it to be elucidative and descriptive of the term 'every person' rather than a legislative expression to exclude those classes of persons not specifically mentioned. . . ."

4. Theriault claims the district judge committed reversible error in refusing to grant a motion for a mistrial.

In his opening argument to the jury, the prosecutor indicated that Theriault was driving a stolen vehicle at the time of his arrest in San Diego. An objection to this comment was overruled. The objection should have been sustained. Evidence of other offenses is universally regarded as prejudicial and is therefore admitted into evidence only for certain specified purposes, NRS 48.045(2), and only then when its probative value outweighs its prejudicial effect. NRS 48.035. The arresting officer testified that Theriault was apprehended when he was observed running a red light and that, pursuant to this routine traffic stop, appellant was discovered to be driving without a driver's license and without proper vehicle registration. As a result, the arresting officer ran the vehicle through the department's computer system and subsequently decided to arrest Theriault and his passenger, Lloyd Paulette. The officer did not tell the jury that the vehicle was stolen.

Theriault contends the prosecutor's implication during opening argument, coupled with the arresting officer's testimony regarding the arrest, engenders an unmistakable inference and suggestion that appellant had stolen the car he was driving. State contends evidence of this offense was nevertheless admissible to show that Paulette and Theriault were together at the time of their apprehension.

In proving that the two were together when apprehended, it was not necessary to show (by unmistakable inference) that

they were driving a stolen vehicle. To this extent there was error. However, when viewed in relation to the overwhelming evidence of guilt presented at trial and the collateral nature of the erroneously admitted evidence (it did not bear directly on the guilt or innocence of the accused), such error must be viewed as harmless. See Serrano v. State, 84 Nev. 676, 447 P.2d 497 (1968); Thompson v. State, 85 Nev. 134, 451 P.2d 704 (1969). The court did not err in denying the motion for a mistrial.

5. At trial, the State introduced two enlarged fingerprint photographs that had been taken by the State's expert witness. Theriault contends that the photographs should not have been admitted because the State's witness could not testify as to which of the particular fingerprints he had enlarged—nor could he absolutely determine which of the two palm prints taken from Theriault had been enlarged—although the State's witness did testify that he had personally made the enlarged photographs of the fingerprints and palm prints and that he had personally lifted them from Theriault. The photographs were offered only to demonstrate to the jury the manner in which fingerprint comparisons are made, and the court admitted them for that purpose only. Theriault cites no authority for his contention that the enlarged photographs should not have been admitted. NRS 52.025 provides that testimony of a witness is sufficient for authentication or identification if he has personal knowledge that a matter is what it is claimed to be. The statute was satisfied, and the evidence properly admitted.

6. State offered in evidence a pawnshop ticket and the envelope in which the pawned ring was placed. Without citing any authority, Theriault contends that the two items should not have been received, because there was no showing that the items were permanent records of the business and because the State's witness testified that only in his capacity as an *employee* did he have care, custody, and control of the items, rather than testifying that he was the actual custodian. NRS 51.135 provides that business records are admissible in any form, so long as they are made at or recorded near the time of the transaction and the information therein transmitted by a person having knowledge of the transaction, as shown by the testimony of the custodian or some other qualified witness. The statute does not require that the records be kept permanently. In this case, the

State's witness testified that he negotiated the transaction and he dictated the information on the items received and that he was responsible for their care, custody, and control. Clearly, the mandates of NRS 51.135 were satisfied and the exhibits were properly received.

7. At trial, Theriault objected to Jury Instructions Nos. 8, 11, 12, 13, 14, and 15. The instructions all relate to the law regarding the commission of a felony murder. They were objected to on the ground that a felony murder was not pleaded in the original indictment and on the additional ground that there was insufficient evidence adduced at trial to warrant the giving of any felony murder instructions. These contentions are without merit. This court held, in Rogers v. State, 83 Nev. 376, 432 P.2d 331 (1967), that the indictment in a felony murder case need not allege that the killing was perpetrated in the commission of a felony. In Rogers, this court said, 83 Nev. at 378, 432 P.2d at 332, in quoting from State v. Mangana, 33 Nev. 511, 518, 112 P. 693, 696 (1910):

" 'It has often been held that a felony and a homicide committed in perpetrating or attempting to perpetrate it, together, constitute the one crime of murder and may be charged as such and in the same manner as ordinary murders are alleged, and that it is not necessary to charge in the indictment that the murder was committed in the perpetration of another crime in order to introduce testimony showing that a felony was committed in addition to it, and that, under an indictment charging murder in the ordinary form and proof that it was committed in the perpetration of a felony, malice, deliberation, and premeditation are implied. [Cites omitted.]' "

An instruction is proper when it is consistent with any reasonable inference the jury might have drawn. Moser v. State, 91 Nev. 809, 544 P.2d 424 (1975). From the evidence adduced, the jury could have reasonably inferred that Theriault, with Paulette, entered the Carones' room for the purpose of committing a robbery and in doing so killed the Carones. Such a theory is supported by evidence showing Theriault's presence in the room and by the subsequent pawning of Mrs. Carone's ring.

Theriault also objects to the giving of an instruction on flight, on the ground that it was not supported by any evidence

adduced at trial. He cites this court's ruling in State v. Rothrock, 45 Nev. 214, 229, 200 P. 525, 529 (1921), wherein the court said: " 'Flight' signifies something more than a mere going away. It embodies the idea of going away with a consciousness of guilt, for the purpose of avoiding arrest." The evidence shows that Paulette checked out of the motel the morning after the murder, receiving a refund for checking out one day early; that Theriault and he left for Los Angeles, checking into a hotel under assumed names. Given these facts, the jury could reasonably infer that Theriault left the scene of the crime for the purpose of avoiding arrest. The instruction was proper.

8. Theriault also contends that the court below committed reversible error in refusing to give certain instructions. The court refused to give a separate instruction on the burden of proof required in a felony murder case. Since the jury were specifically instructed that the burden was upon the State to prove beyond a reasonable doubt each and every element of the crime charged, the jury were adequately instructed on the quantum of proof required.

Theriault also claims the court erred in refusing to give an instruction regarding Theriault's failure to produce evidence on his behalf. The court refused the proposed instruction, but offered to give an appropriate instruction regarding Theriault's Fifth Amendment rights, as provided in NRS 175.181.[1] In McNeeley v. State, 81 Nev. 663, 409 P.2d 135 (1965), it was contended that failure to expand on a statutory instruction in a manner similar to that requested by Theriault was error. This court rejected that contention in language stating in part: "The [statutory] instruction given was in the constitutional and statutory language and it was proper and adequate." Id., 81 Nev. at 666, 409 P.2d at 136. McNeeley is controlling in the instant case.

---

[1]NRS 175.181:

"1. No instruction shall be given relative to the failure of the person charged with the commission of crime or offense to testify, except, upon the request of the person so charged, the court shall instruct the jury that, in accordance with a right guaranteed by the constitution, no person can be compelled, in a criminal action, to be a witness against himself.

"2. Nothing herein contained shall be construed as compelling any such person to testify."

9. Theriault next cites as error the court's ruling permitting the State to elicit testimony regarding Theriault's refusal to give certain handwriting exemplars and in allowing the State in closing argument to comment on such refusal. Although Theriault concedes that under certain circumstances exemplars of handwriting may be compelled without violating the defendant's constitutional rights under the Fifth Amendment, he contends that a prerequisite for such an order is the unavailability of other exemplars of the defendant's handwriting, citing United States v. Green, 282 F.Supp. 373 (S.D. Ind. 1968). Green, however, does not support the proposition for which it is cited. Green held that it would be an infringement of constitutional rights against self-incrimination to require a defendant to write selected phrases narrowed to the very issues involved in the case. In Green, the defendant was asked to write the name appearing on the sales receipt of a fraudulent claim that he was accused of filing. Such was not the situation in the instant case. Additionally, the evidence shows the handwriting exemplars the State had on file were inadequate for purposes of making handwriting comparisons, because they contained examples of mixed writing and printing.

10. Theriault further claims that the court erred in admitting certain photographs of the murder victims, on the ground that they were so gruesome as to be prejudicial. The photos are gruesome. They do, however, depict the scene of the crime. Despite gruesomeness, photographic evidence has been held admissible when it accurately shows the scene of the crime, Langley v. State, 84 Nev. 295, 439 P.2d 986 (1968), or when utilized to show the cause of death, Allen v. State, 91 Nev. 78, 530 P.2d 1195 (1975), and when it reflects the severity of wounds and the manner of their infliction, Nalls v. State, 90 Nev. 124, 520 P.2d 611 (1974). In the instant case, the district judge found that the probative value of the photographic evidence outweighed the prejudicial effect, if any, and properly received the photos in evidence.

11. Finally, Theriault complains that the district judge committed prejudicial misconduct by, among other things, referring to a witness by his first name. We have reviewed the record and find such and similar allegations utterly meritless. Therefore, we affirm.

GUNDERSON, C. J., and BATJER, ZENOFF, and THOMPSON, JJ., concur.