NAT ADLER, Appellant, v. THE STATE
OF NEVADA, Respondent.

No. 9744

May 10, 1979                                            594 P.2d 725

[Rehearing denied June 28, 1979]

*Annette R. Quintana,** Las Vegas, for Appellant.

*Richard Bryan,* Attorney General, Carson City; *Robert J. Miller,* District Attorney, and *Douglas Clark,* Deputy District Attorney, Clark County, for Respondent.

*Ms. Quintana was not appellant's counsel at the time the petition for compensation was filed in the probate proceedings.

## OPINION

By the Court, MANOUKIAN, J.:

Appellant, while serving as public administrator of Clark County, was indicted for a felonious attempt to obtain money by false pretenses. NRS 205.380, 208.070.[1] The charge arose

[1]NRS 205.380 provides:

> Every person who knowingly and designedly by any false pretense obtains from any other person any . . . money, . . . with intent to cheat or defraud the other person, is a cheat, and unless otherwise prescribed by law, shall be punished . . . .

NRS 208.070 provides punishment for attempts.

out of a petition for compensation Adler filed in the estate proceeding of James H. Gillespie, deceased, claiming $11,340.00 for transfer and storage of personal property in a warehouse Adler owned. The indictment alleged that the 1400 square feet represented in the petition exceeded the space required to store the property, and that the ten cent per square foot per day rate was far in excess of the normal and customary charge. The indictment further alleged that appellant had knowledge of the falsity of his claim.[2]

Testifying in his own behalf, Adler defended essentially on the ground that he lacked any culpable intent. He stated that the rates and figures used in his petition for compensation were supplied by his employees. He presented the petition to his attorney who advised him that the charges were rather high but that the filed petition could always be amended if errors were subsequently discovered.

The jury returned a verdict of guilty and Adler was sentenced to three years in the Nevada State Prison, suspended, and placed on probation for an indeterminate period not to exceed five years. From the judgment of conviction and sentence Adler appeals,[3] contending: (1) the evidence was insufficient to support the verdict; (2) it was reversible error to refuse appellant's proffered jury instructions; (3) the conviction for attempting to obtain money under false pretenses is violative of due process; and (4) the grand jury selection process was fatally defective. We turn now to consider these questions.

*1. Sufficiency of the Evidence.*

Appellant questions the sufficiency of the evidence to support the verdict. The test for sufficiency of the evidence on appeal "is not whether this court is convinced of the guilt of the defendant beyond a reasonable doubt, but whether this court can conclude the trier of facts could, acting reasonably, be convinced to the degree of certitude by the evidence which it had a right to believe and accept as true." Crowe v. State, 84 Nev. 358, 366–367, 441 P.2d 90, 95 (1968). Edwards v. State, 90 Nev. 255, 524 P.2d 328 (1974). Here, there was evidence that appellant, while public administrator of Clark County, filed a petition for compensation claiming transfer and storage charges for an 81 day period amounting to $11,340.00. There

---

[2]Adler filed a habeas proceeding in district court challenging the sufficiency of the indictment to allege a public offense. We affirmed the denial of the petition in Adler v. Sheriff, 92 Nev. 436, 552 P.2d 334 (1976).

[3]Adler's motion for a stay pending appeal was denied by the district court on May 3, 1977 and by this Court on October 5, 1977. Adler v. State, 93 Nev. 521, 569 P.2d 403 (1977).

was testimony that at the time of the decedent's death he occupied a two bedroom, two bath furnished apartment and had the use of an additional storage locker (measuring approximately 4' x 4' x 9'). The total living space of the apartment was estimated at 880 to 890 square feet and aside from a refrigerator, two televisions, and possibly a bureau, he owned no furniture. Indeed, Adler's employee in charge of the transfer of the decedent's property testified that he did not remove any large items of furniture from the premises and that the decedent's personal effects occupied a space in Adler's warehouse measuring 4 feet wide, 18 to 20 feet long and averaging 3 to 5 feet in height. Moreover, there was testimony from three moving and storage experts in the area that the prevailing storage rate at that time was five cents per cubic foot per month and that a reasonable charge for goods occupying a space of 540 cubic feet (4' x 5' x 20') would be approximately $30.00 per month.

Adler personally sealed off the apartment the day after the decedent's death. His most casual observation should have revealed that the unit did not contain 1400 square feet. The apartment manager told him that the unit was furnished and testified that he pointed out his furniture to Adler's employees.

Paul Meade, a trust officer of Valley Bank of Nevada, appointed to succeed as administrator of the estate, testified that he visited appellant's warehouse to inventory the decedent's property. Adler pointed out the property, including several items of furniture, as belonging to the estate. Meade noted that there were large discrepancies between his inventory and that taken by the prior special adminstrator. When Meade later returned with the decedent's son to inspect the items, Adler denied them entry, purportedly on advice of counsel.

Adler presented the testimony of his secretary who prepared a draft of the petition for compensation. She testified that although she thought the ten cent per square foot per day rate was "rather high" at the time, Adler nevertheless instructed her to prepare the petition on that basis. According to her, she determined the rate after talking with other transfer and storage companies in Las Vegas. However, cross-examination revealed that only one company, Las Vegas Trasfer and Storage, gave her an estimate. A representative of that company testified that his company charged 4.5 cents per cubic foot per month in 1975.

Adler's attorney testified that the requested compensation sounded like a lot of money to him, but he filed the petition

anyway when Adler stated that he would recheck the figures. The attorney advised Adler that the petition could always be amended if the figures were subsequently found erroneous.

"It is the function of the jury and not the reviewing court to weigh the evidence." McGuire v. State, 86 Nev. 262, 267, 468 P.2d 12, 15 (1970). Here, there was ample evidence upon which the jury could have concluded that Adler knew or should have known the customary rates as well as the actual square or cubic footage required for storage of the decedent's property were remarkably less than that alleged in his petition for compensation. Additionally, we find it significant that appellant refused to admit the decedent's son to inspect the stored property, and both his attorney and secretary were doubtful of the quantitative validity of the claim.

The jury has the prerogative to make logical inferences which flow from the evidence. Moreover, "where there is substantial evidence in the record to support the verdict of the jury, it will not be overturned by an appellate court." Tellis v. State, 85 Nev. 679, 679–680, 462 P.2d 526, 527 (1969). Although appellant attempted to explain his actions and denied any culpable intent, the jury was free to accord to his testimony the weight to which it was entitled. There was substantial evidence, albeit circumstantial, of appellant's guilt. Accordingly, we affirm on the issue of sufficiency of the evidence.

2. *The Proffered Instructions.*

Adler next complains of the trial judge's failure to give two proffered jury instructions. First, he contends the court erred in refusing to add a third paragraph to Instruction No. 4 on intent and good faith.[4] The additional paragraph was refused on the

---

[4]As given, Instruction No. 4 reads as follows:

The question of intent is a matter for you, as Jurors, to determine. Intent is a state of mind and it is not possible to look into a man's mind to see what went on. The only way you have of arriving at the intent of the defendant in this case is for you to consider all the facts and circumstances in evidence to determine whether, as to the statements charged to have been falsely made by the defendant, the defendant knew and specifically intended the statements to be false when he made them.

Thus, evidence of the presence or absence of facts tending to show that the defendant did or did not act in good faith, or that he did or did not conceal or attempt to conceal the true facts and circumstances, may be considered by you as bearing on the question of intent.

basis that it was covered in other instructions given.[5] Beets v. State, 94 Nev. 89, 575 P.2d 591 (1978). We find no error in that determination.

We turn to consider Adler's requested instruction relating to reliance on advice of counsel.[6] In effect, Adler's contention is that he should have been acquitted of willful wrongdoing because he acted on the basis of advice from his attorney. He insists the trial court's refusal to give the proffered instruction was reversible error. Of course, ''a defendant in a criminal case is entitled to have the jury instructed on his theory of the case

---

The proffered third paragraph reads:

> Stated another way, evidence which tends to establish that the defendant's representations regarding the storage and storage fees for the property of the decedent's estate, were openly and publicly conducted and revealed, and evidence tending to establish that the defendant acted in good faith may be sufficient to raise in your minds a reasonable doubt as to the presence or absence of a specific intent on the part of the defendant to commit the crime of attempting to obtain property by false pretenses. If so, it is your duty to acquit the defendant.

[5]In summary, the jury was instructed that to find the defendant guilty it must find the defendant intentionally misrepresented the amount of space required to store the personal property of the estate and substantially misrepresented the storage cost, ''with intent to deceive the court,'' that good faith constituted a complete defense, that a mistake in judgment or error in knowledge or carelessness does not establish fraudulent intent, and finally, that persons who commit an act or make an omission charged under an ignorance or mistake of fact, which disproved any criminal intent are not held criminally responsible.

[6]Defendant unsuccessfully requested Instruction No. 2 which reads as follows:

> The defendant claims that he is not guilty of willful wrongdoing because he acted on the basis of advice from his attorney.
>
> If the defendant before taking any action sought the advice of an attorney whom he considered competent, in good faith and *for the purpose of securing advice on the lawfulness of his possible future conduct,* and made a full and accurate report to his attorney of all material facts of which he has the means of knowledge, and acted strictly in accordance with the advice of his attorney given following his full report, then the defendant would not be willfully doing wrong in doing (omitting) something the law forbids (requires), as that term is used in these instructions.
>
> Whether the defendant acted in good faith for the purpose of seeking guidance as to questions about which he was in doubt, and whether he made a full and complete report to his attorney, and whether he acted strictly in accordance with the advice received, are questions for you to determine. (Emphasis added.)

From Devitt and Blackman, Federal Jury Practice & Instructions, § 16.15.

The judge rejected this proposed instruction since ''the evidence admitted in this case will not justify the giving of this broad instruction. Issue covered in other instructions given.''

as disclosed by the evidence, no matter how weak or incredible that evidence may appear to be." Barger v. State, 81 Nev. 548, 552, 407 P.2d 584, 586 (1965).

However, we note that contrary to appellant's suggestion, reliance on advice of counsel "is not regarded as a separate and distinct defense, but rather as a circumstance indicating good faith which the trier of fact is entitled to consider on the issue of fraudulent intent." Bisno v. United States, 299 F.2d 711, 719 (9th Cir. 1961); United States v. Powell, 513 F.2d 1249 (8th Cir. 1975); cf. Barger v. State, supra. In Barger we held that the trial court's refusal to instruct on the defense of entrapment was prejudicial error. Here, in contrast to Barger, Adler's claimed reliance on advice of counsel is not a complete defense.

Moreover, appellant did not seek legal advice respecting the lawfulness of his future conduct. Rather, he merely presented the facts to his attorney who commented that the requested compensation sounded excessive. His attorney advised that if the figures were later determined erroneous, the petition could be amended. Thereafter, the petition was filed and Adler confirmed its accuracy. There was no proof that Adler relied upon his attorney's advice with respect to the petition.

No one can wilfully and knowingly violate the law and be insulated from the consequences by claiming that he followed the advice of counsel. See Williamson v. United States, 207 U.S. 425 (1908). Accordingly, we uphold the trial judge's refusal to give the instruction.

*3. Due Process.*

Appellant's third argument is summarized as follows:

> The decision in Adler v. Sheriff [92 Nev. 436, 552 P.2d 334 (1976)] represented a judicial enlargement of the scope of the statute on obtaining money or property by false pretenses [NRS 205.380], and that the application of this enlarged construction to the defendant constitutes a violation of due process as being tantamount to the imposition of a law, *ex post facto* [sic].

Essentially, Adler asserts that the application of NRS 205.380 to the acts he allegedly committed was unforeseeable. The state contends, and we agree, that this issue was decided in Adler's habeas proceeding wherein we held:

> We reject Adler's contention that the filing of a false claim

in a judicial proceeding cannot constitute a basis for a prosecution for an attempt to obtain money under false pretenses. [Citations omitted.] Adler v. Sheriff, *supra,* at 440, 552 P.2d at 336.

Adler v. Sheriff, *supra,* established the law of the case, Theriault v. State, 92 Nev. 185, 547 P.2d 668 (1976); Hall v. State, 91 Nev. 314, 535 P.2d 797 (1975), and we observe no reason for reconsideration of the issue.

4. *The Grand Jury.*

Appellant's objection to our statutory grand jury selection procedure is twofold: First, he argues that a grand jury composed only of those indicating a "willingness to serve" (NRS 6.110) is unconstitutionally restrictive. Secondly, he contends that the inclusion of a racial indicator on a random sampling of the venire renders the selection procedure not racially neutral.

*The Volunteer Grand Jury.* NRS 6.110 establishes the procedure for selection of the grand jury in counties having a population of 15,000 or more. The county clerk under the supervision of the district judge, is required to randomly select the names of 100 qualified persons to serve as prospective grand jurors. Each person selected is sent a questionnaire to fill in and return indicating thereon his willingness to serve. Additional names are selected and questionnaires sent until a panel of 100 persons willing to serve is established. The sheriff summons the 100 person venire to court where the district judge selects 17 jurors and 12 alternates.

Appellant maintains a grand jury selected exclusively from those indicating a willingness to serve unconstitutionally limits the jury to a special group. In People v. Goodspeed, 99 Cal. Rptr. 696 (Cal.App. 1972), a similar claim was made. The court there held that "the exclusion from a proposed grand jury list of persons unwilling to serve . . . does not violate constitutional requirements." *Id.* at 705. While it is settled that a grand jury must be drawn from a cross-section of the community, and there must be no systematic and purposeful exclusion of an identifiable class of persons, People v. Goodspeed, *supra;* Alexander v. Louisiana, 405 U.S 625 (1972); Whitus v. Georgia, 385 U.S. 545 (1967), it is clear that the exclusion of persons not willing to serve operates without regard to race, sex, status or ethnic background. Appellant has failed to show purposeful or systematic discrimination against any group or class (Thiel v. Southern Pacific Co., 328 U.S. 217 (1945)); and, he has failed to demonstrate that the persons unwilling to serve

on a grand jury constitute a sufficiently identifiable class. Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed2d 579 (1978); Taylor v. Louisiana, 419 U.S. 522 (1975); People v. Goodspeed, *supra.*

*The Racial Indicator.* Appellant's objection to the use of racial indicators on scope sheets is wholly without merit. Duren v. Missouri, *supra;* Taylor v. Louisiana, *supra.* Here, it was uncontroverted that the entire grand jury selection process was racially neutral. *Cf.* Alexander v. Louisiana, *supra;* Whitus v. Georgia, *supra;* Avery v. Georgia, 345 U.S. 559 (1953), where names of prospective jurors were drawn from sources which designated race.

The conviction is affirmed.

MOWBRAY, C. J., and THOMPSON and BATJER, JJ., concur.

GUNDERSON, J., dissenting:

I respectfully dissent.

Reduced to its essence, the testimony shows without dispute that, when appellant's petition for compensation was filed, his attorney advised him to proceed—telling him that the figures could than be checked and, if need be, corrected later. Thus, in my view, although the record may show poor office procedures, it does not show criminal intent.

Moreover, assuming a factual question remained after the attorney's advice to appellant was unequivocally established, then I think the jury should have been specifically instructed to consider that appellant acted in accordance with a licensed attorney's advice, when considering the issue of his intent.