OPINION
 

 Per Curiam:
 

 In this appeal we hold that a first-degree murder conviction based on felony-murder cannot be sustained unless the indictment
 
 *1411
 
 or information puts the defendant on notice of this charge and states facts which support the conclusion that the murder was committed during the commission of an identified felony.
 

 Appellant Alford stands convicted of first-degree murder with the use of a deadly weapon. The State charged Alford under an “open” charge of murder, which is to say that the State charged only that Alford killed with “malice aforethought.” There was no specific charge of first-degree murder; and there was no specific charge of premeditation and deliberation and no charge that Alford was guilty of committing a homicide during the commission of a felony.
 

 In his opening statement to the jury the prosecutor revealed the State’s theory of its case, stating that “[tjhis was a premeditated, cold blooded and deliberate act of murder. This was murder motivated by hate and anger.” The defense response to these charges was to call a psychiatrist
 
 [1]
 
 to testify as to the mental condition of Alford at the time of the stabbing, hoping to convince the jury either that Alford was so overcome by emotions of hate, anger and jealousy as to be incapable of forming the specific intent to kill or that Alford had a mental state consistent with the commission of voluntary manslaughter rather than first-degree murder. Alford was not put on notice, by the information or by the prosecutor during trial, that he was being charged with first-degree murder under a felony-murder theory. Alford was thus not made aware until after the close of the evidence that he was going to be subject to a conviction of first-degree, felony-murder, a conviction that would be entered irrespective of his intent or other mental state at the time of the killing. Because of the manner in which he was accused and tried, Alford necessarily geared his defense to the mental aspects of the crime as they relate to the crime of manslaughter and to the mental elements of premeditation and deliberation required for first-degree murder.
 

 Quite understandably Alford’s defense was not directed toward
 
 *1412
 
 felony-murder charges, which were specifically levied against him only after the close of evidence in this case. Because Alford was not given fair notice of the charges of felony-murder and was not given an opportunity to defend against these charges, we reverse the conviction and rule that in future murder cases the State must, if it is going to seek a murder conviction based on a felony-murder theory, give notice in its charging document that it is seeking conviction based on a felony-murder theory and must state specific facts which would support such a charge.
 

 The homicide in this case could have fallen into the category of first-degree (premeditated and deliberated) murder, second-degree murder or voluntary manslaughter. The homicide was committed during a time when Alford was attempting to effect a reconciliation with his former wife, and he found her in bed with another man. In apparent heat of passion he pounced upon the man and stabbed him a number of times with his small two-inch-bladed pocket knife. After the stabbing Alford attempted to take his own life with the same knife, cutting his throat and wrists and ending up in the hospital. Alford has never made any attempt to deny the actual killing, and the only defense available to his attorney was to negate the mental elements of premeditation and deliberation and to show that the killing was either second-degree murder or voluntary manslaughter, depending on what version of the facts the jury accepted.
 

 The events on the morning of the killing were as follows: Alford arrived at his former wife’s trailer home early in the morning and engaged in a conversation with two babysitters who were in the living room. He asked the babysitters if his wife was in the bedroom, and they told him that she was. There is no evidence that at that time he had illegally entered the premises or that he was a trespasser.
 

 Upon being told where his wife was, Alford proceeded to the bedroom. In the bedroom he saw his former wife and her boyfriend in bed together. There is conflicting evidence about the manner in which Alford entered the bedroom. One of the witnesses stated that there was nothing unusual about Alford’s entry into the bedroom; however, his former wife testified that the “door came crashing down,” intimating that Alford had forced his way into the bedroom. Whether Alford forced
 
 [2]
 
 his way into the bedroom or not, there is no question that, once in there, he stabbed the boyfriend to death.
 

 
 *1413
 
 After the State and the defendant had rested their cases, the State offered jury instructions (numbered 8, 10 and 11) which were to the effect that the jury was entitled to convict Alford of first-degree murder on a felony-murder theory, and that the jury could find Alford guilty of first-degree murder, regardless of Alford’s state of mind at the time of the killing. The felony-murder instructions were based on Alford’s supposed burglary of the trailer home.
 
 [3]
 

 Alford had no opportunity to respond to these new charges (except perhaps through the closing argument of his defense counsel); and it was error for the trial court to have instructed the jury that it could convict Alford on this uncharged crime. Upon receiving the mentioned instructions the jury was free to find Alford guilty of first-degree murder without any proof of intention to kill or proof of premeditation and deliberation. Upon the court’s giving of these felony-murder instructions, the jury was permitted to convict Alford if it believed beyond a reasonable doubt that he was in the process of committing a burglary, that is to say, unlawfully breaking into the trailer home with an intent to commit a felony. NRS 205.060(1). Alford had no opportunity to produce evidence to oppose these charges; and he had no reason to believe, before the time that these instructions were proposed and given (after the close of evidence), that the prosecution was going to pursue a felony-murder theory.
 

 It simply was not fair for the prosecution to bring in charges of felony-murder after the close of the case. In support of this proposition we cite the federal case of Sheppard v. Rees, 909 F.2d 1234 (9th Cir. 1989). In state proceedings, the defendant in
 
 Sheppard
 
 had been charged with premeditated murder with the use of a deadly weapon. As in the present case, following the close of evidence and prior to argument, the prosecution requested that instructions on felony-murder be given to the jury. The court gave the requested instructions over defense objections. The Ninth Circuit Court of Appeals held that the defendant under such circumstances was not afforded adequate notice of the charges against him, in violation of the Sixth Amendment to the United States Constitution. The court went on to hold that this
 
 *1414
 
 denial was not subject to a harmless error analysis because the violation arose out of the constitutionally improper use of one of multiple legal theories of culpability which culminated in a general verdict of guilty.
 

 Another federal case that warrants consideration here is that of Givens v. Housewright, 786 F.2d 1378 (9th Cir. 1986). The information in this Nevada case was another “open” charge of murder, charging that the defendant had killed with malice aforethought, referring to NRS 200.010 and NRS 200.030. The jury was instructed on the elements of premeditation and deliberation and, as well, on first-degree murder committed by torture. Murder-by-torture had not been charged in the information. The Ninth Circuit Court of Appeals held that such an information was constitutionally inadequate to support a conviction of murder-by-torture because the charging document led the defendant to believe that he was being prosecuted for an intentional killing and because the information did not provide the defendant with adequate warning that he had to meet an alternate theory of criminal liability. The court noted that since there was no special verdict, it was impossible to tell whether the defendant was convicted for an intentional, deliberate killing or for murder-by-torture. In the face of the
 
 Sheppard
 
 and
 
 Givens
 
 decisions we would be hard pressed to affirm Alford’s conviction in this case.
 

 In the present case there is no reason why defense counsel would have even been thinking about
 
 burglary.
 
 Until the prosecution introduced this subject during the process of settling instructions, burglary was not a matter of any concern to the defense; and there was no occasion for Alford’s defense attorney to be concerned about defending against a burglary charge. Alford quite openly admitted to the homicide, and the circumstances around the killing made the case look to his counsel very much like a manslaughter or second-degree murder case, the outcome being dependant upon Alford’s mental state
 
 at the time of the killing,
 
 not at the time he entered the victim’s premises, as would be the case if conviction were to be based on a felony-murder, burglary theory.
 

 If the prosecution had stated in its opening argument that it was pursuing a burglary-based felony-murder theory or had even suggested this approach at some time during the prosecution’s case, perhaps Alford would have been in a position to do something by way of a defense to this kind of charge. If the prosecution had proceeded in this way, however, it still would have been a very unsatisfactory way of putting Alford on notice of the nature of the charges against him. The only way that the State could have properly and adequately put Alford on notice that it was seeking to convict him on the basis of a burglary and without
 
 *1415
 
 proof of actual malice or premeditation and deliberation was for the State to tell him so at the accusatorial stage of the prosecution, by putting in the criminal complaint and information facts supporting a felony-murder charge based on
 
 burglary.
 

 In Simpson v. District Court, 88 Nev. 654, 503 P.2d 1225 (1972), we recognized that charging documents which permit prosecutors to change theories in a murder case violate the Sixth Amendment and NRS 173.075(1).
 

 To put a man on trial without giving him,
 
 in the information, “a statement of the acts constituting the offense
 
 in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended” and to let him know these facts, for the first time when his trial is in progress, is to deprive him of the protection the statute was designed to give' him and deny him due process of law in violation of .... the Constitution.
 

 Id.
 
 at 659, 503 P.2d at 1229 (emphasis added) (quoting State v. McMahan, 65 P.2d 156, 159-60 (Idaho 1937)). Given such language, one would feel safe in assuming that an unadorned allegation that a defendant had killed a human being with “malice aforethought” would not put that defendant on notice that the prosecution was going to try to prove that the defendant killed during the commission of a burglary or some other, unspecified felony.
 
 [4]
 
 Because Alford did not receive adequate notice of the charges upon which his conviction was based, we reverse the conviction and remand the matter to the district court for a new trial.
 

 [1]
 

 Alford’s sole defense, which focused on
 
 mens rea
 
 at the time of the killing, was frustrated by the trial court’s refusal to permit the psychiatrist who examined Alford to testify as to Alford’s state of mind. The court ruled that the defense could not present the proffered state-of-mind testimony because the defendant’s intent was an ultimate issue of fact for the jury to decide. This ruling was, of course, error of major consequence.
 
 See, e. g.,
 
 Southern Pacific Co. v. Watkins, 83 Nev. 471, 487, 435 P.2d 498, 508 (1967) (The court recognized that “[t]he clear trend in the law of evidence is [] that an expert witness, in his field of expertise may testify to matters which embrace the ultimate issue to be decided by the triers of fact.”) NRS 50.295 expressly permits the admission of expert testimony concerning a defendant’s intent at the time of committing a homicide. The court’s ruling on this point effectually aborted Alford’s attempt to defend himself against charges that he had killed his former wife’s boyfriend deliberately and in cold blood.
 

 [2]
 

 The information initially charged Alford with the crime of forcible home invasion. (“Any person who, by day or night, forcibly enters an inhabited dwelling without permission of the owner, resident or lawful occupant, whether or not a person is present at the time of entry, is guilty of invasion of the home.” NRS 205.067(1).) The State dismissed these charges prior to the commencement of trial; and it appears from the evidence that Alford entered the home peaceably and probably with permission.
 

 [3]
 

 There is serious question here as to whether there is evidence upon which a jury could have found burglary beyond a reasonable doubt. Alford knew the trailer home and had visited it before. He entered the home peaceably and began talking with the babysitters. Whether or not he broke down the bedroom door where his wife was, this does not look very much like a burglary case. The State does not specify in the proffered instruction or in its appellate briefs just what felony Alford was supposed to have had in mind when he committed the burglary that supports the murder charge in this case. Because we rest this opinion on Alford’s not receiving fair notice of the charges, we do not elaborate on the point discussed here, that there is no evidence to support the giving of a burglary/felony-murder instruction.
 

 [4]
 

 This court has held on a number of occasions that an indictment or information will support a murder conviction even though it fails to put the defendant on notice that the prosecution was going to be based upon a homicide committed during the commission of a specified and factually supported felony.
 
 See
 
 Redmen v. State, 108 Nev. 227, 828 P.2d 395 (1992); Shaw v. State, 104 Nev. 100, 753 P.2d 888 (1988); Theriault v. State, 92 Nev. 185, 547 P.2d 668 (1976); Rogers v. State, 83 Nev. 376, 432 P.2d 331 (1967). We overrule these cases; and, henceforth, the State will be required to charge felony-murder and its attendant facts if it chooses to pursue a conviction for murder on the basis of the felony-murder rule.