DONALD LEE BIGPOND, APPELLANT, *v.*
THE STATE OF NEVADA, RESPONDENT.

No. 57558

March 1, 2012                                      270 P.3d 1244

---

*Robert B. Walker*, Carson City, for Appellant.

*Catherine Cortez Masto*, Attorney General, Carson City; *Neil A. Rombardo*, District Attorney, and *Mary-Margaret Madden*, Deputy District Attorney, Carson City, for Respondent.

Before DOUGLAS, HARDESTY and PARRAGUIRRE, JJ.

## OPINION

By the Court, DOUGLAS, J.:

In this appeal, we address whether evidence of "other crimes, wrongs or acts" may be admitted for a nonpropensity purpose other than those listed in NRS 48.045(2). Appellant Donald Lee Bigpond contends that evidence of prior acts of domestic violence is per se inadmissible under NRS 48.045(2) when it is not offered for a purpose listed in the statute. We disagree.

We hold that evidence of "other crimes, wrongs or acts" may be admitted for a nonpropensity purpose other than those listed in NRS 48.045(2). To the extent that our prior opinions indicate that NRS 48.045(2) codifies the broad rule of exclusion adopted in *State v. McFarlin*, 41 Nev. 486, 494, 172 P. 371, 373 (1918), we overrule those opinions. *See, e.g., Rowbottom v. State*, 105 Nev. 472, 485, 779 P.2d 934, 942 (1989), *overruled on other grounds by Jezdik v. State*, 121 Nev. 129, 139 n.34, 110 P.3d 1058, 1065 n.34 (2005); *Willett v. State*, 94 Nev. 620, 622, 584 P.2d 684, 685 (1978); *Theriault v. State*, 92 Nev. 185, 189, 547 P.2d 668, 671 (1976), *overruled on other grounds by Alford v. State*, 111 Nev. 1409, 1415 n.4, 906 P.2d 714, 717 n.4 (1995). Consistent with this view of NRS 48.045(2), we clarify the first factor of the test set forth in *Tinch v. State*, 113 Nev. 1170, 1176, 946 P.2d 1061, 1064-65 (1997), for determining the admissibility of prior bad act evidence to reflect the narrow limits of the general rule of exclusion and that the prosecution must demonstrate that the evidence is relevant for a nonpropensity purpose.

With respect to this case, we conclude that the district court did not abuse its discretion. The evidence of prior acts of domestic violence involving the victim and defendant were relevant where the victim recanted her pretrial accusations against the defendant because the evidence placed their relationship in context and provided a possible explanation for the recantation, which assisted the jury in evaluating the victim's credibility. The prior acts were proven by clear and convincing evidence, and the district court properly weighed the probative value against the danger of unfair prejudice,

giving an appropriate limiting instruction. Because the evidence was properly admitted, we affirm the judgment of conviction.

## FACTS AND PROCEDURAL HISTORY

Bigpond was charged with battery constituting domestic violence, third offense within seven years, for striking his wife in the jaw with a closed fist, causing her to fall to the ground and lose consciousness. Before trial, the State filed a motion to admit evidence of prior incidents of domestic violence involving Bigpond and the victim. The State, anticipating that when the victim took the stand at trial she would recant her pretrial statements implicating Bigpond, argued that the evidence was not being offered to show Bigpond's propensity to commit domestic violence but to explain the relationship between Bigpond and the victim and provide a possible explanation for the victim's anticipated recantation. Bigpond argued that the evidence was inadmissible because it was not being offered for a relevant purpose listed in NRS 48.045(2). The district court reserved judgment on the State's motion in limine and indicated that it would make its decision and hold the appropriate hearing if the victim took the stand and recanted her pretrial statements.

During direct examination, the victim recanted her previous statements to law enforcement, paramedics, and an emergency room physician that Bigpond struck her in the jaw with a closed fist and knocked her to the ground. Consistent with its pretrial decision, the district court conducted a hearing outside the presence of the jury pursuant to *Petrocelli v. State*, 101 Nev. 46, 692 P.2d 503 (1985), and determined that the victim's prior allegations of domestic violence against Bigpond were relevant to explain the relationship between the victim and Bigpond and provide a possible explanation for her recantation, and that the evidence's probative value was not outweighed by the danger of unfair prejudice. The court thus decided to admit the victim's prior allegations and issued a limiting instruction to the jury before allowing the State to reexamine the victim.

Bigpond was convicted of battery constituting domestic violence, third offense within seven years. This appeal followed.

## DISCUSSION

Bigpond contends that the district court abused its discretion by admitting evidence of his prior acts of domestic violence for the purpose of explaining the relationship between himself and the victim in order to provide a possible explanation for the victim's recantation during trial. Bigpond argues that admitting evidence for this purpose pursuant to NRS 48.045(2) is precluded by our opinion in *Rowbottom v. State*, 105 Nev. 472, 485, 779 P.2d 934, 942 (1989), *overruled on other grounds by Jezdik v. State*, 121 Nev.

129, 139 n.34, 110 P.3d 1058, 1065 n.34 (2005). In *Rowbottom*, we decided that testimony admitted to show the relationship between the defendant and his family was inadmissible under NRS 48.045(2) because that is not one of the purposes listed in the statute. *Id.* Although dicta, this statement reflects an understanding of Nevada's prior bad act jurisprudence that does not take account of a significant change in the approach to prior bad act evidence that was codified when the Legislature adopted NRS 48.045 in 1971. We now correct this misunderstanding.

## Common law

The controversy over uncharged misconduct evidence dates back to the English common law and developed contemporaneously in both England and America. *See* Julius Stone, *The Rule of Exclusion of Similar Fact Evidence: England*, 46 Harv. L. Rev. 954 (1933); Julius Stone, *The Rule of Exclusion of Similar Fact Evidence: America*, 51 Harv. L. Rev. 988 (1938) [hereinafter Stone, *Similar Fact Evidence: America*]; Thomas J. Reed, *Trial by Propensity: Admission of Other Criminal Acts Evidenced in Federal Criminal Trials*, 50 U. Cin. L. Rev. 713 (1981). This controversy has coalesced around two divergent views. What Professor Julius Stone referred to as the "original rule" reflects a narrow rule of exclusion that excludes uncharged misconduct evidence that is only relevant to prove a defendant's criminal disposition but allows such evidence for any other relevant purpose. *See* Stone, *Similar Fact Evidence: America*, *supra*, at 1004. The alternative view reflects a broad rule of exclusion in which evidence of uncharged misconduct is inadmissible unless it fits within a narrow list of exceptions. *See id.* at 1005.

The broad rule of exclusion, with its narrow list of exceptions, took root in America with the New York Court of Appeals' landmark opinion by Judge Werner in *People v. Molineux*, 61 N.E. 286, 293-94 (N.Y. 1901). *See generally* Stone, *Similar Fact Evidence: America*, *supra*, at 1023 (discussing the significance of *Molineux*). After *Molineux*, a majority of jurisdictions adopted Judge Werner's broad exclusionary approach.

This court followed that trend. Citing *Molineux*, we adopted the broad rule of exclusion, with a narrow list of exceptions, in our 1918 decision in *State v. McFarlin*:

It is the general rule that evidence of the perpetration of distinct crimes from those for which a defendant is being tried will not be considered. There are, however, exceptions to this general rule. In the well-known case of *People v. Molineux*, [61 N.E. 286 (N.Y. 1901),] this question was considered at length, and it was held that, generally speaking, evidence of other crimes might be considered *only* when it tends to establish either (1) motive; (2) intent; (3) absence of mis-

take or accident; (4) a common scheme or plan, embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; or (5) the identity of the person charged with the commission of the crime for which the defendant is being tried. Such is, we think, the correct rule.

41 Nev. 486, 494, 172 P. 371, 373 (1918) (emphasis added). While we later acknowledged in *Nester v. State of Nevada*, 75 Nev. 41, 51, 334 P.2d 524, 529 (1959), that the narrow rule of exclusion, which had been followed in California, was likely the common-law rule, we continued to adhere to the broad rule of exclusion announced in *Molineux. See, e.g., Fairman v. State*, 83 Nev. 137, 139, 425 P.2d 342, 343 (1967) (citing *Molineux*); *Lindsay v. State*, 87 Nev. 1, 2-3, 478 P.2d 1022, 1022 (1971) ("Nevada follows the rule of exclusion concerning evidence of other offenses, unless such evidence is relevant to prove the commission of the crime charged with respect to motive, intent, identity, the absence of mistake or accident, or a common scheme or plan." (footnotes omitted)).

*Codification*

The narrow rule of exclusion experienced a resurgence when the Model Code of Evidence and the Uniform Rules of Evidence were adopted in 1942 and 1953. *See* Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 2:29 (2009); 22 Charles Alan Wright et al., *Federal Practice and Procedure* § 5239 (1978). The narrow rule is reflected in the comment by the drafters of Uniform Rule 55 that " 'the [exceptions] are only exemplary and not exclusive.' " *See* 22 Wright et al., *supra*, § 5240 (quoting the National Conference of Commissioners on Uniform State Laws, *Handbook* 193 (1953)). These model rules were the precursors to the Federal Rules of Evidence as initially proposed in 1969 and adopted in 1975. During debate on Federal Rule of Evidence 404(b), the House Judiciary Committee specifically rejected an amendment that would have modified the proposed rule to incorporate the broad exclusionary approach, explaining that the rule was "intended to place 'greater emphasis on (the) admissibility' of uncharged misconduct evidence." 1 Imwinkelried, *supra*, § 2:31 (quoting H.R. Rep. No. 93-650 (1973), *as reprinted in* 1974 U.S.C.C.A.N. 7075, 7081). Although some federal circuits initially hesitated to interpret Rule 404(b) as a narrow rule of exclusion, all of the federal circuits have now interpreted it in this manner.[1]

---

[1]*See, e.g., United States v. Fosher*, 568 F.2d 207, 212 (1st Cir. 1978); *United States v. Benedetto*, 571 F.2d 1246, 1248 (2d Cir. 1978); *United States v. Long*, 574 F.2d 761, 765-66 (3d Cir. 1978); *United States v. Johnson*, 634

In 1971, the Nevada Legislature adopted NRS 48.045(2) based on Draft Federal Rule 404. *See* Legislative Commission of the Legislative Counsel Bureau, A Proposed Evidence Code, Bulletin No. 90 (Nev. 1970) [hereinafter Bulletin No. 90]. As codified, the statute contains almost identical language to Federal Rule of Evidence 404(b).[2] In drafting the Nevada evidence code, the Legislature attempted to follow the proposed federal rules ''as closely as possible,'' deviating only where the federal provisions would have sharply curtailed then-existing Nevada law. *See* Hearing on S.B. 12 Before the Senate Judiciary Comm., 56th Leg. (Nev., February 10, 1971) (statement of evidence code subcommittee Chairman Close); Bulletin No. 90, *supra*.[3]

*Statutory interpretation*

Whether evidence of ''other crimes, wrongs or acts'' may be admitted for a nonpropensity purpose other than those listed in NRS 48.045(2) is a matter of statutory interpretation. We review questions of statutory interpretation de novo. *State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011). When interpreting a statutory provision, this court will look first to the plain language of the statute. *Mendoza-Lobos v. State*, 125 Nev. 634, 642, 218 P.3d 501, 506 (2009). ''We must attribute the plain meaning to a statute that is not ambiguous.'' *State v. Catanio*, 120 Nev. 1030, 1033, 102 P.3d 588, 590 (2004).

NRS 48.045(2) provides that evidence of ''other crimes, wrongs or acts'' is inadmissible to prove propensity but that it may be admissible ''for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.''[4] The plain language of NRS 48.045(2), like Rule

---

F.2d 735, 737 (4th Cir. 1980); *United States v. Shaw*, 701 F.2d 367, 386 (5th Cir. 1983); *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985); *United States v. Jordan*, 722 F.2d 353, 356 (7th Cir. 1983); *United States v. Burk*, 912 F.2d 225, 228 (8th Cir. 1990); *United States v. Riggins*, 539 F.2d 682, 683 (9th Cir. 1976); *United States v. Nolan*, 551 F.2d 266, 271 (10th Cir. 1977); *United States v. Cohen*, 888 F.2d 770, 776 (11th Cir. 1989); *United States. v. Burkley*, 591 F.2d 903, 920 (D.C. Cir. 1978).

[2]In 1991, a notice requirement was added to Rule 404(b). The language of the rule was restyled in 2011. Fed. R. Evid. 404 advisory committee's note. These changes have not been incorporated into NRS 48.045.

[3]In codifying the Nevada evidence code, the subcommittee considered three models: (1) National Conference of Commissioners on Uniform State Rules: Uniform Rules of Evidence (1953); (2) California Evidence Code (1965); and (3) Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Preliminary Draft of Proposed Rules of Evidence for United States Courts and Magistrates (1969).

[4]The full text of the provisions is as follows:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in con-

404(b), follows the narrow rule of exclusion. The first sentence of NRS 48.045(2) states a general rule of exclusion that applies only when the evidence is offered to prove (1) "the character of a person" and (2) that the person "acted in conformity therewith." *See* 22 Wright et al., *supra*, § 5239. The second sentence then explains that "evidence of other crimes may be admissible when offered for purposes that fall outside the narrow limits of the general rule." *Id.* § 5240. This construction is consistent with the use of the expression "such as," which indicates that the list of "other purposes" is illustrative rather than exhaustive.[5] Under this construction, "the traditional exceptions become simply illustrations of the kinds of use that are not prohibited by the general rule."[6] *Id.* The plain language of NRS 48.045(2) thus provides that other bad act evidence is inadmissible to prove propensity but is admissible for any other purpose and provides examples of some other purposes.

Despite the plain language of NRS 48.045(2) and the national consensus on the meaning of its federal counterpart, we have been inconsistent in our characterization of the provision. At times, we have continued to apply a broad rule of exclusion by stating that relevant evidence is admissible *"only* for certain *specified* purposes," *Theriault v. State*, 92 Nev. 185, 189, 547 P.2d 668, 671 (1976) (emphases added), *overruled on other grounds by Alford v. State*, 111 Nev. 1409, 1415 n.4, 906 P.2d 714, 717 n.4 (1995); *see also Rowbottom*, 105 Nev. at 485, 779 P.2d at 942, and that the broad rule of exclusion "is codified at NRS 48.045(2)," *Willett v. State*, 94 Nev. 620, 622, 584 P.2d 684, 685 (1978). In other cases we have used language that more closely mirrors Professor Stone's narrow rule of exclusion and the statutory language:

> It is the general rule that the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some other purpose than to show a probability that the accused committed the charged crime because of a trait of character.

*Williams v. State*, 95 Nev. 830, 833, 603 P.2d 694, 696 (1979); *Shults v. State*, 96 Nev. 742, 748, 616 P.2d 388, 392 (1980) ("But

---

formity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[5]*See* NRS 48.105(2) and NRS 48.135(2), which also use "such as" to introduce a nonexclusive list.

[6]We note that the list of other purposes contained in NRS 48.045(2) is broader than the five purposes listed in *Molineux* and adopted by this court in *McFarlin*. For example, it contains the entirely new purpose of "opportunity." *See* Thomas J. Reed, *Admission of Other Criminal Act Evidence After Adoption of the Federal Rules of Evidence*, 53 U. Cin. L. Rev. 113, 148 (1984) (explaining that the opportunity exception "does not seem to have appeared in any pre-[404(b)] Rules works by commentators").

such evidence is admissible if relevant for some purpose other than to show an accused's criminal character and the probability that he committed the crime.''); *see also Braunstein v. State*, 118 Nev. 68, 74, 40 P.3d 413, 417-18 (2002) (explaining that we abandoned our common law approach when the Legislature enacted NRS 48.045(2) into law). And consistent with the narrow rule of exclusion, we have approved of the admission of evidence of uncharged misconduct for nonpropensity purposes other than those listed in NRS 48.045(2). *See, e.g.*, *Domingues v. State*, 112 Nev. 683, 694-95, 917 P.2d 1364, 1372 (1996) (affirming admission of uncharged misconduct evidence for purpose of assessing witness credibility and to explain witness's reason for delay in reporting defendant's confession); *Bradley v. State*, 109 Nev. 1090, 1093, 864 P.2d 1272, 1274 (1993) (affirming admission of uncharged misconduct evidence for the purpose of explaining expert opinion); *Roever v. State*, 114 Nev. 867, 873-74, 963 P.2d 503, 506-07 (1998) (SHEARING, J., concurring) (use of evidence for impeachment was a permissible '' 'other purpose' '' (quoting *U.S. v. Lara*, 956 F.2d 994, 997 (10th Cir. 1992))); *Braunstein*, 118 Nev. at 74-75 & n.19, 40 P.3d at 418 & n.19 (acknowledging purposes other than those listed in NRS 48.045(2) while concluding that ''propensity for sexual aberration'' is not one of those purposes because it ''sounds much more like the kind of inadmissible, bad character evidence prohibited by NRS 48.045(1)'').

These disparate lines of authority may cause confusion about the scope and meaning of NRS 48.045(2). Therefore, we now clarify that evidence of ''other crimes, wrongs or acts'' may be admitted under NRS 48.045(2) for a relevant nonpropensity purpose other than those listed in the statute. To the extent that our prior caselaw is inconsistent with this holding, it is expressly overruled.

Although we conclude that evidence of ''other crimes, wrongs or acts'' may be admitted for any relevant nonpropensity purpose, we reemphasize that ''[a] presumption of inadmissibility attaches to all prior bad act evidence.'' *Rosky v. State*, 121 Nev. 184, 195, 111 P.3d 690, 697 (2005). ''[T]he use of uncharged bad act evidence to convict a defendant is heavily disfavored in our criminal justice system because bad acts are often irrelevant and prejudicial and force the accused to defend against vague and unsubstantiated charges.'' *Tavares v. State*, 117 Nev. 725, 730, 30 P.3d 1128, 1131 (2001). To ensure that this type of evidence is not misused, we have held that it is admissible only when the trial court determines that (1) the evidence is relevant to the crime charged, (2) the act is proven by clear and convincing evidence, and (3) the probative value of the evidence is not substantially outweighed by the danger

of unfair prejudice. *Tinch v. State*, 113 Nev. 1170, 1176, 946 P.2d 1061, 1064-65 (1997). However, we failed to explain what purposes the evidence must be relevant for. To avoid further confusion, we modify the first factor in *Tinch* to reflect the narrow limits of the general rule of exclusion. In order to overcome the presumption of inadmissibility, the prosecutor must request a hearing and establish that: (1) the prior bad act is relevant to the crime charged and for a purpose other than proving the defendant's propensity, (2) the act is proven by clear and convincing evidence, and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*Application of NRS 48.045(2)*

In this case, the district court admitted evidence of prior allegations of domestic violence following a thorough *Petrocelli* hearing and the issuance of an appropriate limiting instruction to the jury. *Mclellan v. State*, 124 Nev. 263, 270, 182 P.3d 106, 111 (2008). We review the district court's decision for a manifest abuse of discretion. *Ledbetter v. State*, 122 Nev. 252, 259, 129 P.3d 671, 676 (2006).

In deciding to admit the evidence, the district court relied on two Hawaii cases which held that when the victim recants pretrial accusations against the defendant, evidence of prior acts of domestic violence involving the same victim and defendant may be admissible "to show the jury the context of the relationship between the victim and the defendant, where the relationship is offered as a possible explanation for the complaining witness's recantation at trial." *State v. Clark*, 926 P.2d 194, 208 (Haw. 1996); *State v. Asuncion*, 129 P.3d 1182, 1195 (Haw. Ct. App. 2006). Hawaii is not alone in permitting evidence of prior acts of domestic violence under similar theories based on evidence provisions similar to NRS 48.045(2). *See, e.g., State v. Magers*, 189 P.3d 126, 133 (Wash. 2008) ("[P]rior acts of domestic violence, involving the defendant and the crime victim, are admissible in order to assist the jury in judging the credibility of a recanting victim."); *Com. v. Butler*, 839 N.E.2d 307, 313 (Mass. 2005) (holding that the jury is "entitled to consider evidence that depicted the hostile relationship between [the victim] and the defendant [in order to help] explain her recantation, so that they could adequately assess her credibility"); *State v. Bauer*, 598 N.W.2d 352, 364 (Minn. 1999) (admitting evidence under Minn. R. Evid. 404(b) because it served to "illuminate" appellant and victim's strained relationship and "place the incident for which appellant was charged into proper context"); *State v. Sanders*, 716 A.2d 11, 13 (Vt. 1998) (admitting prior history of abuse under Vt. R. Evid. 404(b) "to put the victim's recantation of prior statements into context for the jury" in

order to give "the jury an understanding of why the victim is less than candid in her testimony" so that they can decide which of the victim's statements is more reliable); *State v. Frost*, 577 A.2d 1282, 1291 (N.J. Super. Ct. App. Div. 1990) (admitting evidence of prior domestic abuse in order to prove the victim's state of mind in order to explain why victim stayed with defendant).

Here, the victim's credibility was clearly a central issue at trial because she was the only witness to the alleged incident. An emergency room physician, paramedic, and police officer all testified that the victim told them that Bigpond punched her in the jaw with a closed fist and she fell to the ground. However, during trial the victim recanted and claimed that her husband never punched her and she just made up the story because she was mad at him. Like the above cases, the victim's prior accusations of domestic violence were relevant because they provide insight into the relationship and the victim's possible reason for recanting her prior accusations, which would assist the jury in adequately assessing the victim's credibility. *See* NRS 48.015 (explaining that to be relevant, the evidence must concern a "fact . . . of consequence to the determination of the action"). The first *Tinch* factor is satisfied because the victim's prior accusations against Bigpond were relevant and were not admitted in order to show Bigpond's propensity to commit domestic violence but to provide a possible explanation for why the victim recanted her previous statements made to law enforcement and medical personnel.

The second *Tinch* factor is also satisfied. There was clear and convincing evidence that the alleged prior bad acts occurred. Bigpond previously pleaded guilty to punching the victim with a closed fist on July 16, 2009, and grabbing the victim by the hair, slapping her, and pushing her to the ground on November 1, 2009.

Finally, the district court carefully weighed the probative value of the evidence against the danger of unfair prejudice, concluding that the probative value was not substantially outweighed by the danger of unfair prejudice as required by the final *Tinch* factor. During the *Petrocelli* hearing, the district court recognized that the admission of the victim's prior allegations of domestic violence would prejudice Bigpond but concluded that the importance of establishing the relationship between Bigpond and the victim outweighed the danger of unfair prejudice. To minimize that prejudice, the district court restricted the victim's testimony to her prior accusations and did not admit the prior convictions. Furthermore, prior to the admission of the evidence, the district court issued a

limiting instruction explaining that the evidence was only "being allowed to provide [the jury] with a context of the relationship between the witness and the defendant and to give [the jury] a possible explanation for the witness's differing testimony in court at this time."

We conclude that the district court did not abuse its discretion because it adequately assessed the three *Tinch* factors outside the presence of the jury, *see Ledbetter v. State*, 122 Nev. 252, 259, 129 P.3d 671, 676 (2006), and gave an appropriate limiting instruction before admission of the evidence explaining the limited purpose for which the evidence was admitted, *see Mclellan v. State*, 124 Nev. 263, 270, 182 P.3d 106, 111 (2008). "In reaching this conclusion, however, we caution the State that our decision is dependent upon the particular facts of this case and the use of prior act evidence . . . pursuant to NRS 48.045(2) should always be approached with circumspection." *Ledbetter*, 122 Nev. at 264, 129 P.3d at 679-80.

We affirm the judgment of conviction.

HARDESTY and PARRAGUIRRE, JJ., concur.