# IN THE SUPREME COURT OF THE STATE OF NEVADA

JASON OMAR GRIFFITH,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 66312

FILED

AUG 1 1 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of one count of second-degree murder. Eighth Judicial District Court, Clark County; Kathleen E. Delaney, Judge.

Appellant Jason Omar Griffith and Debra Flores-Narvaez met in late 2009 and began a sexual relationship thereafter. Griffith's and Flores-Narvaez's relationship was volatile, and according to Griffith, Flores-Narvaez acted irrationally towards him. During their final encounter, the parties' dispute turned violent, resulting in the death of Flores-Narvaez. Griffith was indicted and found guilty of second-degree murder. Griffith now appeals.[1]

On appeal, Griffith argues that (1) he was forced to waive his privilege against self-incrimination, (2) his statements to police were not suppressed even though he invoked his right to counsel, (3) the district court's evidentiary rulings were incorrect, (4) there was prosecutorial

---

[1]The facts and procedural history are known to the parties and will not be recounted further except as is necessary for our disposition.

16-24855

misconduct, and (5) the district court failed to comply with NRS 175.451. We address each argument in turn.

*Privilege against self-incrimination*

During his opening statement, Griffith was explicit that his trial theory was self-defense. After the State finished its direct examination of Griffith's roommate, Luis Colombo, the State argued that Griffith would not be able to ask Colombo about any violence between Griffith and Flores-Narvaez until Griffith testified or put forth other evidence of self-defense. The district court found that there had not yet been evidence of self-defense,[2] so evidence of Flores-Narvaez's violence was inadmissible. As a result of this ruling, Griffith waived his right to remain silent and testified.

Griffith argues that the district court violated his right to counsel and his right against self-incrimination by requiring him to testify before allowing him to present evidence of self-defense. Whether the district court properly denied the admission of specific instances of Flores-Narvaez's violence until evidence was presented that Griffith acted in self-defense is reviewed for an abuse of discretion. *See Petty v. State,* 116 Nev. 321, 325, 997 P.2d 800, 802 (2000).

---

[2]Griffith contended that evidence of self-defense had already been presented: Colombo testified during the State's direct examination that he had seen Griffith and Flores-Narvaez physically and verbally fight, and the State presented an audio statement made by Griffith in which he informed the police that Flores-Narvaez abused him. These instances do not demonstrate that Griffith acted in self-defense in this situation; they only demonstrate that there was a history of domestic violence between Griffith and Flores-Narvaez. Thus, we conclude that the district court did not abuse its discretion with regard to this finding.

The State urges this court to follow the holding in *Menendez v. Terhune*, 422 F.3d 1012 (9th Cir. 2005), in which the United States Court of Appeals for the Ninth Circuit addressed a foundational holding and its effect on a defendant's constitutional rights. In *Menendez*, the two defendant-brothers killed their parents and, at trial, they sought to present corroborating evidence showing that they were fearful of their parents. *Id.* at 1017, 1030-31. The Ninth Circuit first addressed the foundational issue and held that, "[a]s a matter of state evidence law, a foundation had to be laid before the evidence could be admitted," which "could only be accomplished [in this case] if the defendants testified about their actual belief of imminent danger." *Id.* at 1030, 1032. After making this foundation determination, the *Menendez* court then considered the effect that its foundation holding had on the defendants' constitutional rights. The Ninth Circuit held that the trial court "did not require the defendants to take the stand; he merely regulated the admission of evidence, and his commentary as to what evidence might constitute a foundation did not infringe on [the defendant]s' right to decide whether to testify." *Id.* at 1032. The disallowed evidence in *Menendez* was corroborative testimony, *id.* at 1031, which naturally requires the existence of other evidence.

This case, however, presents a different question. Griffith's proposed evidence was not corroborative and, therefore, did not require other evidence to be admitted first. Unlike *Menendez*, Griffith maintained self-defense in his opening statement. Because this court has allowed self-defense to be raised any time before the defense rests, we conclude that the foundation for self-defense can be laid in a defendant's opening statement by the assertion of facts to be presented at trial. *See Coombs v.*

*State*, 91 Nev. 489, 490, 538 P.2d 162, 162 (1975) (allowing the deceased's character to be brought into evidence when "the circumstances are such as to raise a doubt whether the homicide was committed in malice or was prompted by the instinct of self-preservation" (quoting *State v. Pearce*, 15 Nev. 188, 191 (1880))); *see also* NRS 48.061(1)(b) ("[E]vidence of domestic violence . . . that is offered by the . . . defense is admissible in a criminal proceeding for any relevant purpose, including, without limitation, when determining: . . . [w]hether a defendant in accordance with NRS 200.200 has killed another in self-defense . . . ."); *Daniel v. State*, 119 Nev. 498, 516, 78 P.3d 890, 902 (2003) (*"[W]hen a defendant claims self-defense* and knew of relevant specific acts by a victim, evidence of the acts can be presented . . . ."* (Emphasis added.)). Further, requiring self-defense to be raised solely by the defendant's testimony would improperly shift the burden of proof in a self-defense case. *See Hill v. State*, 98 Nev. 295, 297, 647 P.2d 370, 371 (1982) (stating that once self-defense has been raised, the State has "the burden of proving absence of justification or excuse for the homicide"); *see also Kelso v. State*, 95 Nev. 37, 42, 588 P.2d 1035, 1039 (1979) (if a defendant is accused of murder, he "cannot be required to carry the burden of proving self-defense by a preponderance of the evidence").

When Griffith's opening statement announced his intention to pursue self-defense, the district court, the State and the jury were on notice that Griffith was pursuing self-defense. Accordingly, the district court abused its discretion in finding that Griffith failed to lay a foundation for self-defense. *See Petty*, 116 Nev. at 325, 997 P.2d at 802.

Turning to the second part of the *Menendez* analysis, the district court here appears to have based its ruling on NRS 47.070(1), which provides that "[w]hen the relevancy of evidence depends upon the

fulfillment of a condition of fact, the judge shall admit it upon the introduction of evidence sufficient to support a finding of the fulfillment of the condition." Pursuant to NRS 47.070(1), the district court, like the trial court in *Menendez*, was "merely regulat[ing] the admission of evidence," 422 F.3d at 1032, when it commented that Griffith would need to testify prior to cross-examining Colombo. Although the district court's regulation of evidence was in error, its holding was premised on foundational grounds. Accordingly, like the Ninth Circuit in *Menendez*, we hold that the district court did not require Griffith to testify; instead, it merely made a foundational ruling. *See also Brooks v. Tennessee*, 406 U.S. 605, 613 (1972) (holding that "the ordinary power of a trial judge to set the order of proof" is not curtailed by the fact that "the accused and his counsel may not be restricted in deciding whether, and when in the course of presenting his defense, the accused should take the stand"); *United States v. Singh*, 811 F.2d 758, 762 (2d Cir. 1987) ("[T]he court did not compel appellant to testify at all. It merely refused to accept the proffered testimony of other witnesses until a proper foundation was laid. There was nothing erroneous about this."). As such, we further hold that that the district court did not violate Griffith's right to counsel or his right against self-incrimination.

*Invoking the right to counsel*

Griffith argues that the district court erroneously refused to suppress the statements he made to the police during his interrogation, after repeatedly and unequivocally invoking his right to counsel. There is no dispute that Griffith was in custody during the interrogation or that he was provided a *Miranda* warning. The only question before this court is whether Griffith's specific invocation of his right to counsel in response to individual questions, invoked his right to counsel towards the entire

interrogation. Because Griffith's argument on appeal differs from his argument before the district court, we review for plain error.[3] *See Browning v. State*, 124 Nev. 517, 533, 188 P.3d 60, 71 (2008).

If a suspect invokes his right to counsel, the interrogation must cease. *Carter v. State*, 129 Nev., Adv. Op. 26, 299 P.3d 367, 370 (2013). In order to invoke the right to counsel, an accused's statement must "reasonably be construed to be an expression of a desire for the assistance of an attorney." *Id.* (quoting *Davis v. United States*, 512 U.S. 452, 459 (1994)). But, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id.* (quoting *Davis*, 512 U.S. at 459). Even if an accused invokes his right to counsel, his statements in response to additional questions are admissible if the accused "initiated further discussions with the police, and . . . knowingly and intelligently waived the right he had invoked." *Id.* (quoting *Smith v. Illinois*, 469 U.S. 91, 95 (1984)).

On five occasions during the interrogation, Griffith indicated that he did not want to answer individual questions without counsel present. However, on three of those occasions, Griffith invited the detectives to ask additional questions. These three invitations provide a basis upon which to conclude that Griffith was not invoking his right to

---

[3]We note that Griffith's argument before the district court focused on statements made in the police vehicle after the interrogation was over and individual responses during the interrogation in which Griffith invoked his right to counsel.

counsel towards the entire interrogation. Additionally, these invitations show that Griffith was voluntarily continuing the interrogation without counsel. Accordingly, the detectives were not required to cease questioning,[4] and we conclude that Griffith only invoked his right to counsel with regard to individual questions. *See Connecticut v. Barrett*, 479 U.S. 523, 525, 529-30 (1987) (holding that a defendant's statement that "he would not give a written statement unless his attorney was present but had 'no problem' talking about the incident" was not an indication that he "invoked his right to counsel for all purposes"); *see also People v. Adams*, 627 N.W.2d 623, 628 (Mich. Ct. App. 2001) ("Because defendant only declined to answer some questions regarding a few limited topics and only asserted a need for counsel with respect to questions regarding motive, but did not unequivocally invoke his right to remain silent or his right to counsel, the police detective was permitted to continue interviewing defendant regarding other matters pertaining to the . . . murder."); *Burrell v. Commonwealth*, 710 S.E.2d 509, 515 (Va. Ct.

---

[4]We also note that Griffith's specific invocations of counsel can be characterized as a tactical move, whereby Griffith was able to remain silent to certain questions while also continuing the interrogation to learn the evidence against him. *See Hurd v. Terhune*, 619 F.3d 1080, 1087 (9th Cir. 2010) ("A suspect may remain selectively silent by answering some questions and then refusing to answer others without taking the risk that his silence may be used against him at trial."); *see also Berghuis v. Thompkins*, 560 U.S. 370, 388 (2010) ("As questioning [during an interrogation] commences and then continues, the suspect has the opportunity to consider the choices he or she faces and to make a more informed decision, either to insist on silence or to cooperate."); *Michigan v. Mosley*, 423 U.S. 96, 103-04 (1975) (explaining that the rights protected by *Miranda* allow a suspect to "control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation").

App. 2011) ("[S]tatements the suspect seeks to suppress that were made in response to police interrogation are admissible at trial if the suspect's qualified invocation of his right to counsel permitted that interrogation."). Because the questions that Griffith refused to answer and his refusals were properly suppressed, the introduction into evidence of the redacted audio-video recording of Griffith's interrogation did not amount to plain error.[5]

*Evidentiary rulings*

Griffith argues that the district court erred by disallowing evidence of Flores-Narvaez's prior acts of domestic violence, a video made by Griffith, a 911 call, emails from Florez-Narvaez and Flores-Narvaez's alleged pregnancy. We review a district court's evidentiary rulings for an

---

[5]Griffith also argues that the audio-video recording of the interrogation was not properly redacted. Because Griffith failed to object at trial, we review for plain error. *Browning v. State*, 124 Nev. 517, 533, 188 P.3d 60, 71 (2008). Griffith asserts that the jury improperly heard a detective ask Griffith if he killed Flores-Narvaez. This question and Griffith's corresponding answer were not required to be redacted because Griffith did not invoke his right to counsel to this question—he only invoked to prior questions. Griffith further contends that the jury improperly heard him say "[b]ut if you're asking me, you know, questions about something like that, like I don't, I don't have anything else to say on that." This statement should have been redacted. *See Hurd*, 619 F.3d at 1088 ("[W]hen a defendant remains silent or refuses to answer a question posed by police, that silence or refusal is inadmissible."). However, because this statement was a small portion of a 30 minute interrogation, we conclude that reversal is not warranted. *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003) (stating that reversal is only required when the defendant can show that the error affected his substantial rights and "actual prejudice or a miscarriage of justice" occurred).

 

abuse of discretion. *Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001).

*Prior acts of domestic violence*

Prior to trial, Griffith moved to admit evidence of Flores-Narvaez's violent acts towards three of her ex-boyfriends. The district court disallowed evidence of violence against two of the ex-boyfriends because there was no physical violence, and allowed evidence of domestic violence against the third ex-boyfriend if Griffith knew about it. Because Griffith's argument on appeal differs from his argument before the district court, we review for plain error. *Browning*, 124 Nev. at 533, 188 P.3d at 71.

Character evidence is inadmissible "for the purpose of proving that the person acted in conformity therewith on a particular occasion." NRS 48.045(1). One exception to this rule is "[e]vidence of the character or a trait of character of the victim . . . offered by an accused." NRS 48.045(1)(b). "This exception permits a defendant to present evidence of a victim's character when it tends to prove that the victim was the likely aggressor, regardless of the defendant's knowledge of the victim's character." *Daniel v. State*, 119 Nev. 498, 514, 78 P.3d 890, 901 (2003). "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or in the form of an opinion." NRS 48.055(1).

In addition to character evidence, "proof of specific instances of the person's conduct may be made on direct or cross-examination" when the "character or a trait of character of a person is an essential element of a charge, claim or defense." NRS 48.055(2). And "[e]vidence of other crimes, wrongs or acts is" admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or

accident," but it is not admissible to show "the character of a person in order to show that the person acted in conformity therewith." NRS 48.045(2).

Because Griffith sought to admit evidence of Flores-Narvaez's specific acts of prior domestic violence against her ex-boyfriends, which do not qualify as reputation or opinion testimony, they are inadmissible pursuant to NRS 48.045(1) and NRS 48.055(1). These acts are also inadmissible pursuant to NRS 48.055(2) because the "character of the victim is not an essential element of self-defense," *Daniel*, 119 Nev. at 514, 78 P.3d at 901, and Flores-Narvaez's character is not an essential element to Griffith's alternate manslaughter theory of defense.[6] Turning to NRS 48.045(2), there is no evidence that the specific acts constituted a common plan or scheme, so these acts are inadmissible pursuant to NRS 48.045(2). Accordingly, the district court did not abuse its discretion in refusing to admit this evidence.[7]

---

[6]To establish voluntary manslaughter, "there must be a serious and highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal injury on the person killing." NRS 200.050(1).

[7]Griffith argues that this court should follow *Collman v. State*, 116 Nev. 687, 702 n.3, 7 P.3d 426, 436 n.3 (2000), and apply a reduced standard of admissibility for a victim's bad acts. In *Collman*, we determined that the district court did not abuse its discretion by using a less stringent standard, but we did not amend our jurisprudence in favor of adopting the reduced standard. *Id.*

Griffith also attempts to compare this case to *Bigpond v. State*, in which "[w]e h[e]ld that evidence of 'other crimes, wrongs or acts' may be admitted for a nonpropensity purpose other than those listed in NRS

*continued on next page . . .*

*Video*

The district court disallowed a video that Griffith recorded of Flores-Narvaez because it was incomplete. Griffith's exhibit contained a 1 hour and 18 minute video without audio showing Griffith and Flores-Narvaez arguing and a 1 minute and 40 second audio clip without video in which Flores-Narvaez admitted to causing property damage. It is unclear from our review of the record whether the audio clip is from a portion of the video. Accordingly, because the video and audio clip, which were recorded approximately six months prior to Flores-Narvaez's death, lack context and completeness, we conclude that the district court did not abuse its discretion in disallowing them.

*911 call*

The district court also disallowed a 911 call made by a third party after Griffith's tires were slashed. "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter, is not inadmissible

---

*. . . continued*

48.045(2)." 128 Nev. 108, 110, 270 P.3d 1244, 1245 (2012) (quoting NRS 48.045(2)). This comparison is ill-founded. The victim in *Bigpond* "recanted her pretrial accusations against the defendant," so we determined that the defendant's prior domestic acts against the victim would be admitted for the nonpropensity purpose of "plac[ing] their relationship in context and provided a possible explanation for the recantation, which assisted the jury in evaluating the victim's credibility." 128 Nev. at 110, 270 P.3d at 1246. Unlike *Bigpond*, where the domestic violence was between the defendant and the victim, the domestic violence in this case was between the victim and her ex-boyfriends, so the nonpropensity purpose for which the evidence was admitted in *Bigpond* is not present here.

under the hearsay rule." NRS 51.085. Similarly, "[a] statement of the declarant's then existing state of mind, emotion, sensation or physical condition, such as intent, plan, motive, design, mental feeling, pain and bodily health, is not inadmissible under the hearsay rule." NRS 51.105(1). Because the 911 call was made quickly after discovering the slashed tires and the third party's statements went to her then existing state of mind, the 911 call recording was admissible as an exception to the hearsay rule. However, because the third party testified to the slashing of Griffith's tires, her 911 call was superfluous, so any error was harmless. NRS 178.598.

*Emails*

The district court disallowed four emails that Flores-Narvaez sent to Griffith because they did not set forth threats or specific acts of domestic violence. NRS 48.061(1)(b) provides that "evidence of domestic violence . . . that is offered by the . . . defense is admissible in a criminal proceeding for any relevant purpose, including, without limitation, when determining: . . . [w]hether a defendant in accordance with NRS 200.200 has killed another in self-defense." Domestic violence is defined as battery, assault, compelling action by force or the threat of force, sexual assault, harassment, false imprisonment, or unlawful entry to a residence when such act is committed against a relative or person in a dating relationship. NRS 33.018(1). An email, by its nature, only constitutes domestic violence if it contains a threat of force or involves harassment. Because this was the basis upon which the district court made its finding, the district court did not abuse its discretion.

*Flores-Narvaez's alleged pregnancy*

During the course of their relationship, Flores-Narvaez told Griffith that she was pregnant twice: once in April 2010, which Flores-

Narvaez allegedly aborted, and once in September 2010. Griffith cross-examined a detective about a missing persons investigation on Flores-Narvaez. The State objected before Griffith could ask the detective about a statement in his report that Flores-Narvaez's doctor had indicated that Flores-Narvaez was not pregnant, contrary to what she had represented to Griffith. The district court disallowed the question on hearsay grounds.

NRS 51.155(3) provides that public records and reports "are not inadmissible under the hearsay rule if they set forth: . . . against the State in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or the method or circumstances of the investigation indicate lack of trustworthiness." Through his investigation, the detective learned from Flores-Narvaez's doctor that Flores-Narvaez was not pregnant in April 2010. Because this information was included in the police report and was from a trustworthy source, we conclude that the information was admissible pursuant to NRS 51.155(3), and the district court abused its discretion in disallowing it.[8] However, because the alleged pregnancy took place eight months prior to the killing, the district court's error in disallowing this evidence was harmless. NRS 178.598.

*Prosecutorial misconduct*

Griffith argues that the State called him a liar, disparaged him, vouched for Colombo, and made inferences to facts not in evidence.

_____

[8]The State argues that the detective's report contained multiple levels of hearsay. Because Griffith was only attempting to introduce a fact learned by the detective during the course of his investigation—not the doctor's statement itself—this argument is meritless.

In deciding whether misconduct occurred, we determine "whether the prosecutor's conduct was improper" and, if so, whether reversal is warranted. *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). Reversal is not warranted if the error was harmless. *Id.*

*Accusations of lying*

During cross-examination, the State asked Griffith if he would agree that he "would have to be pretty proficient at lying to lead the life that [he] led with [another girlfriend] and have these other sexual partners at the same time." And during closing argument, the State argued that "[t]he only way that you don't [find Griffith guilty] on these facts is somehow you think [Flores-Narvaez] deserved it because on these facts with those lies--."[9] It is improper to characterize a witness's testimony as a lie. *Witherow v. State*, 104 Nev. 721, 724, 765 P.2d 1153, 1155 (1988). However, a prosecutor is given reasonable latitude to argue about a witness's credibility when the outcome of a case depends on the witness's truthfulness, "even if this means occasionally stating in argument that a witness is lying." *Rowland v. State*, 118 Nev. 31, 39, 39 P.3d 114, 119 (2002). A prosecutor can also summarize a witness's testimony. *Rhyne v. State*, 118 Nev. 1, 10-11, 38 P.3d 163, 169 (2002). Because Griffith admitted several times that he had lied, we conclude that

---

[9]The State asked Griffith other questions about lying during cross-examination and referred to Griffith's lies at other times during closing arguments. However, we decline to address these other alleged instances of misconduct because Griffith failed to object and they do not amount to plain error. *See Nelson v. State*, 123 Nev. 534, 543, 170 P.3d 517, 524 (2007).

it was not misconduct for the State to ask Griffith about those lies and summarize his testimony during closing argument. *See id.*

*Disparagement*

During closing argument, the State commented that it was "painfully obvious from [Griffith's] behavior during the 9, 10, 12 months that you know about it is he didn't have empathy for any other human being who was alive."[10] Disparaging comments constitute misconduct. *McGuire v. State*, 100 Nev. 153, 157, 677 P.2d 1060, 1064 (1984). However, because Griffith dismembered Flores-Narvaez's body, put her body in plastic tubs with concrete, and hid her death for approximately a month, the prosecutor's statement was not a disparaging comment, but rather a reasonable inference from the evidence.

*Vouching*

During the State's closing arguments, the prosecutor stated:

> Who has the motivation to lie about what happens to that particular bag, Mr. Colombo or the defendant? And ask yourself why would he lie about it? And the answer is, *I can't think of a good reason.* He's already got the deal. . . .
>
> . . . .
>
> And what is [Colombo's] motivation to lie about that? Well, none. But weird, in the defendant's version of events, he kind of leaves a possibility that maybe [Colombo] is not lying about it, maybe he's just mistaken about that particular fact.

---

[10]Although Griffith described other instances of alleged disparagement on appeal, we decline to address them because Griffith failed to object and they do not amount to plain error. *See Nelson*, 123 Nev. at 543, 170 P.3d at 524.

> Really? Do *we* think Luis Colombo is a more credible witness? Do you think Luis Colombo is a more credible witness than Jason Griffith? The answer is, [o]f course, he is.

(Emphases added.) As Griffith failed to object to this argument, we therefore review for plain error.

A prosecutor cannot vouch for its own witness. *Lisle v. State*, 113 Nev. 540, 553, 937 P.2d 473, 481 (1997). Vouching occurs if the prosecution "place[s] the prestige of the government behind the witness or . . . indicate[s] that information not presented to the jury supports the witness's testimony." *Id.* (internal quotation marks omitted). Because this statement was only a small portion of the prosecution's closing argument, we conclude that any error does not warrant reversal. *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003) (providing that reversal is only required when the defendant can show that the error affected his substantial rights and "actual prejudice or a miscarriage of justice" occurred).

*Inferences to facts not in evidence*

While being transported to the jail following the interrogation and arrest, Griffith stated to a detective, "you know I didn't plan this, it was a spur of the moment thing, she attacked me and she ended up dead." Griffith argues that this statement was only admissible if introduced by the State because it would have been hearsay had he attempted to introduce it through the police officer. Griffith further argues that the State chose not to introduce this statement, which would corroborate that Griffith had claimed self-defense from early on, yet the State argued during closing argument that Griffith's self-defense claim was not corroborated and was fabricated at the time of trial.

Similarly, during closing argument, the State commented that:

> What else do you know? You know that [Flores-Narvaez] is an individual who, as far as you know, has never threatened physical harm against any human being on earth because the only person who said that to you, right, is this gentleman right here, this guy. If you have to believe that she has ever threatened to kill somebody before, you would have to believe it from his mouth.
>
> . . . .
>
> I mean, I guess, Mr. Griffith's car could act in self-defense because that's the only thing she has ever damaged before. But as it relates to an act of violence of [Flores-Narvaez], do you have any evidence of it? No. Zero. None. Any act of actual violence? No. . . .
>
> But what actual evidence is there of an actual act of violence of [Flores-Narvaez]? . . .

Griffith explains that the State knew that Flores-Narvaez had committed various acts of violence, successfully argued to keep those acts of violence out of evidence, and then benefitted from keeping this evidence out by arguing that Griffith's testimony that Flores-Narvaez was violent lacked corroboration.

The State is prohibited from making inferences to facts not in evidence. *Glover v. Eighth Judicial Dist. Court*, 125 Nev. 691, 705, 220 P.3d 684, 694 (2009). We have previously held that "allowing the prosecutor to emphasize in closing arguments the failure of [the defendant] to present . . . corroborating testimony, which failure resulted from the district court's ruling . . . , resulted in an improper and prejudicial advantage to the State." *Runion v. State*, 116 Nev. 1041, 1053,

13 P.3d 52, 60 (2000). Unlike *Runion*, where the corroborating statement was not allowed into evidence in any capacity, Griffith's corroborating statement, made while being transported to the jail, was introduced by Griffith's own testimony. Any misconduct by the State was harmless. Additionally, although the State's argument regarding Flores-Narvaez's domestic violence directly violates *Runion*, as we concluded in *Runion*, this type of misconduct alone does not warrant reversal. *Id.* at 1054, 13 P.3d at 60.[11]

*Jury questions during deliberation*

Griffith argues that the district court failed to comply with NRS 175.451 after the jury submitted two written questions during deliberations. The jury asked if "a verbal threat constitute[s] an attempt" and "how can a [s]erious and highly provoking injury occur without direct physical contact?" After the district court received the questions, it telephoned counsel from chambers to discuss appropriate responses. It then wrote "Regretfully, the Court is not at Liberty to Supplement the Jury Instructions" and returned the questions to the jury.

NRS 175.451 provides:

> After the jury have retired for deliberation, if there is any disagreement between them as to any part of the testimony, or if they desire to be

---

[11]Griffith also argues that the State made inferences to facts not in evidence when it asked Griffith about Flores-Narvaez's alleged pregnancies and abortions, and argued during closing argument that Griffith knew that Flores-Narvaez was pregnant. The State was entitled to delve into the pregnancies because Griffith's belief about Flores-Narvaez's pregnancies was relevant. Accordingly, we conclude that Griffith's argument lacks merit.

informed on any point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required shall be given in the presence of, or after notice to, the district attorney and the defendant or the defendant's counsel.

The district court has discretion regarding the method and extent to which it answers a jury's question, *Tellis v. State*, 84 Nev. 587, 591, 445 P.2d 938, 941 (1968), but a defendant has a due process right to be present if a judge communicates with the jury, *Manning v. State*, 131 Nev., Adv. Op. 26, 348 P.3d 1015, 1019 (2015). If a district court replies to a jury's question without notifying or seeking input from the parties, we review for harmless error. *Id.*

While the telephone call discussing the jury question should have been included in the record, Griffith has not shown that the response given by the district court to the jurors was inconsistent with what was agreed to telephonically or that the response given altered the jury instructions. Accordingly, we conclude that there was no error.[12]

Accordingly, having considered Griffith's contentions and concluded that they do not warrant reversal, we

---

[12]Griffith also argues that cumulative error warrants reversal of his conviction. We will not reverse a conviction based on cumulative error unless a defendant's constitutional right to a fair trial was violated. *Rose v. State*, 123 Nev. 194, 211, 163 P.3d 408, 419 (2007). We consider the following factors when determining whether there is cumulative error: "(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Id.* (internal quotation marks omitted). Although Griffith's conviction is for a serious crime, we do not believe that the issue of guilt is close absent the errors we have identified. Accordingly, we conclude that no relief is warranted.

ORDER the judgment of the district court AFFIRMED.

_____, J.
Hardesty

_____, J.
Saitta

_____, J.
Pickering

cc:    Hon. Kathleen E. Delaney, District Judge
Clark County Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk